**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **U.S. LIQUIDS, INC.** | § | **CASE NO.  04-41522-H5-7** |
| **Debtor** | § | **(Chapter 7) Jointly Administered** |
| ---------------------------------------------------- | | |
| **RODNEY TOW, TRUSTEE** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 11-3135** |
| | § | |
| **LIBERTY MUTUAL INSURANCE** | § | |
| **COMPANY, LIBERTY MUTUAL** | § | |
| **FIRE INSURANCE COMPANY,** | § | |
| **LIBERTY INSURANCE CORPORATION,** | § | |
| **EMPLOYERS INSURANCE OF** | § | |
| **WASAU, WASAU GENERAL** | § | |
| **INSURANCE COMPANY, WASAU** | § | |
| **UNDERWRITERS INSURANCE** | § | |
| **COMPANY, and WAUSAU BUSINESS** | § | |
| **INSURANCE COMPANY** | § | |
| **Defendants** | | |

---

## Trustee's Brief in Support of His Response to Defendants' Motion to Dismiss Trustee's First Amended Complaint for Turnover of Estate Property or, in the Alternative, Motion for More Definite Statement

---

**TO THE HONORABLE KAREN BROWN, UNITED STATES BANKRUPTCY JUDGE:**

Rodney Tow, Trustee, files his Brief in Support of Trustee's Response to Defendants' Motion to Dismiss Trustee's First Amended Complaint for Turnover of Estate Property, or, in the Alternative, Motion for More Definite Statement, and in support thereof would show unto this Court as follows:

## I.   Background

**A.   Procedural Background**

1.   The Trustee agrees with the procedural background set forth in paragraphs 1 - 6 of the Defendants' Brief in Support of the Motion to Dismiss, (the "Defendants' Brief").

2.   In response to the allegations set forth in paragraph 7 of the Defendants' Brief, the Trustee would submit that service of the Amended Complaint was achieved on May 6, 2011, both on the Registered Agent and the President of Defendants.

**B.   The Amended Complaint**

3.   Paragraphs 8 through 15 of the Defendants' Brief merely sets forth allegations contained in the Trustee's Amended Complaint.   These allegations are further clarified in the Trustee's Second Amended Complaint, paragraphs 7 through 22, filed contemporaneously with the filing of this Brief.

## II.   Defendants' Rule 12(b)(1) Motion to Dismiss

4.   "In considering a motion to dismiss, the 'court must accept as well-pleaded facts as true and view them in the light most favorable to the plaintiff.'"[1]   A court may not look beyond the pleadings in ruling on a motion to dismiss.[2]   "The issue is not whether [Plaintiff] will ultimately prevail but whether [Plaintiff] is entitled to offer evidence to support [its] claim."[3]   A court can only grant a motion to dismiss if a plaintiff "would not be entitled to relief under any set of facts or any possible theory that [the plaintiff]

---

[1]   *See Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996).

[2]   *See McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992).

[3]   *See Muhammad v. Dallas County Community Supervision and Corrections Department*, 479 F.3d 977, 979 (5th Cir. 2007) (Internal qotations omitted).

could prove consistent with the allegations in the complaint."[4]

5.      This Court has jurisdiction over the Amended Complaint.  As explained fully in
subsequent sections of this Section II of the Response, and contrary to Defendants'
arguments,[5]  a) the claims asserted in the Amended Complaint belong to the Estate; b) the
Estate has an interest in the property sought to be recovered in the Amended Complaint;
c) this Estate has standing to bring this Adversary Proceeding; and d) the claims asserted
in the Amended Complaint are ripe for review.

6.      Because the Estate has standing as a result of its interest in the claims asserted and the
property sought in the Amended Complaint, this Court has jurisdiction under the relevant
case law cited by Defendants.[6]

7.      This Adversary Proceeding is at least "related to" the Bankruptcy Estate because "the
outcome of th[e] proceeding could conceivably have an[] effect on the [E]state."[7]
Showing that a proceeding is at least "related to" a case under title 11 establishes
jurisdiction.[8]   Accordingly, there is no question that this Adversary Proceeding has a
conceivable effect on this Estate and is at least "related to" the Debtor's chapter 11 case
within the meaning of the Fifth Circuit's jurisdictional dictates in *Bass*.

8.      If the amount of recovery in this Adversary Proceeding affects the amount the Estate

---

[4]  *See Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

[5]  *Compare* Brief in Support of the Motion to Dismiss at 12-15, ¶¶ 16-23

[6]  *See id.* at 12-15, ¶¶ 18-23 and cases cited therein.

[7]  *See Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999).

[8]  *See* Defendants' Brief at 14, ¶ 21, citing *Wood v. Wood (In re Wood),* 825 F.2d 90,93 (5th Cir. 1987).

owes BofA, clearly it is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) & (O).

9.      The Withheld LOC Proceeds are property of the Estate pursuant to 11 U.S.C. §541(a)(1),

a fact which the Defendants have admitted when they executed the First and Second

Stipulation Agreements approved by this Court.[9]

10.     In the present case, Defendants have failed to meet the high standard required to prevail

on a motion to dismiss and therefore the Motion should be denied.

**A.      The Claims Asserted in the Amended Complaint Belong to the Estate**

11.     In paragraphs 24 through 27 of Defendants' Brief, Defendants argue that the claims

asserted in the Amended Complaint do not belong to this Estate.   Contrary to

Defendants' argument, the claims asserted by the Trustee belong to the Estate.   BofA

filed a secured proof of claim in each of the Debtors' Estates demonstrating by that action

that BofA is looking to the Estate to satisfy its secured claim.   When Defendant, Liberty

Mutual, drew down the full amount of the Letter of Credit it triggered the Debtor's

contractual responsibility to reimburse BofA for the complete draw on the Letter of

Credit as well as all interest accruing on such funds until their return or repayment in

full.[10]   Therefore, the Trustee is obligated to obtain the Excess LOC Proceeds to satisfy

BofA's claim against the Estate.

12.     The Excess LOC Proceeds, the Premium Overpayment, and interest on both amounts, are

---

[9]   The First Stipulation was entered on September 12, 2007, Docket No. 136 and the Second Stipulation
was entered on April 30, 2009, Docket No. 162.

[10]   *See In re Stonebridge Technologies, Inc.*, 430 F.3d 260 (5th Cir. 2005); *See also Demczyk v. Mutual Life
Ins. (In re Graham Square, Inc.)*, 126 F.3d 823, 827 (6th Cir. 1997). (Discussing the fact that a letter of credit
transaction is comprised of three contracts: (1) the underlying contract - here the Master Agreement, (2) the letter of
credit contract between borrower and lender - here BofA and the Debtors, and (3) the contract between the bank and
the beneficiary of the letter of credit - here BofA and Defendants).

property of the Estate.   As noted in *TIC United*, "[T]o the extent a letter of credit is drawn down in an amount in excess of that which the beneficiary of the letter of credit is legally entitled to receive, case law permits the recovery of those wrongfully drawn funds from the beneficiary for the benefit of the estate".[11]

13.    Likewise, because the beneficiary had drawn down far more proceeds than the maximum amount of its claims, the court concluded that the excess proceeds drawn down by the beneficiary were property of the estate subject to turnover.[12]   Similar reasoning applies in this Adversary Proceeding.

14.    Defendants' actions in turning over a total of $3,971,078.08 to the Estate demonstrate that Defendants clearly held Excess LOC Proceeds. These Excess LOC Proceeds are property of the Estate within the purview of the court's reasoning in the *TIC* case and other cases cited in footnote 11.   Likewise, the Withheld LOC Funds plus interest on all the Excess LOC Proceeds and the Premium Overpayment are property of the Estate because the underlying Master Agreement still governs the rights of the parties.[13] Because property of the Estate is at issue, this Adversary Proceeding is within this Court's jurisdiction.

15.    The Excess LOC Proceeds with interest, the Premium Overpayment with interest, and any Surcharge for Defendants' failure to comply with the Bankruptcy Code are property

---

[11]    *See In re TIC United Corp.*, 2008 WL 2437868 (Bankr. N.D.Tex. 2008), (Noting that this is consistent with the Fifth Circuit's opinion in *Stonebridge*, id.); *In re Builders Transport, Inc.*  471 F.3d 1178, 1187 (11th Cir. 2006) (Holding that excess proceeds from letter of credit must be returned and underlying [Master Agreement] governs rights of the parties.); *Phar-Mor, Inc.*, 344 B.R. 852, 855-56 (Bankr. N.D. Ohio 2005) (Holding that insurer had no right to hold excess letter of credit proceeds.)

[12]    *See Phar-Mor*, 344 B.R. at 855.

[13]    *See Builders Transport*, 471 F.3d at 1186.

of the Estate.

16.     Accordingly, Defendants' Motion to Dismiss based on lack of subject matter jurisdiction

under Federal Rule 12(b)(1) is without merit and should be denied.

**B.      Plaintiff Has Standing to Bring the Claims Asserted in the Amended Complaint**

17.     In paragraph 28 & 29 of the Defendants' Brief, Defendants argue that the Trustee lacks

standing to bring the actions asserted in the Amended Complaint.   In response the

Trustee would submit that, although some of the claims set forth in the Amended

Complaint were collaterally assigned to BofA, all of the claims remain property of this

Estate.  BofA was merely granted a security interest in the Master Agreement and the

claims that arise under that Master Agreement.   Therefore, the Trustee has standing to

bring the claims asserted in the Amended Complaint.

18.     The collateral assignment by Debtor of its interest in the Master Agreement was merely a

security interest to ensure performance under the Credit Agreement–not an absolute

assignment.

19.     However, whichever kind of assignment the Court were to conclude Debtor granted to

BofA, the causes of action or contract rights under the Master Agreement would still

qualify as property of the Estate.[14]   In *Amaravathi* the court held an absolute or collateral

assignment did not affect the debtor's interest under §541.  Under the reasoning of

*Amaravathi,* the Estate of U S Liquids also has an equitable interest in the Master

---

[14]     *See generally In re Amaravathi Ltd. Part.*, 416 B.R. 618, 629-37 (Bankr. S.D. Tex. 2009)(Holding that rents assigned to mortgage lender, whether assignment was absolute or collateral, did not deprive debtor of equitable interest in the rents within the meaning of Bankruptcy Code §541(a), given that lender had not given credit to debtor on debt owed, which would give rise to true assignment and transfer title of rents) *Also*  (Holding that 11 U.S.C. § 541(1),(6) governed the outcome of the issue that debtor's equitable interest in proceeds from property of the debtor became property of the debtor's estate).

Agreement, despite BofA's security interest, in that once the Estate pays off BofA, the remaining recovery from this Adversary Proceeding will belong to the Estate.

20.     In fact, Defendants have stipulated not once, but twice that these proceeds are property of the Estate when they executed the First and Second Stipulations and turned over the majority of the Excess LOC Proceeds to the Estate.[15]   Defendants have twice turned over portions of the Excess LOC Proceeds to the Estate, admitting previously on both occasions that *the Excess LOC Proceeds were property of the Estate*.

21.     The common law doctrine of Judicial Estoppel prevents Defendants from taking inconsistent positions in litigation before this Court.[16]   Therefore, the Court cannot hear Defendants now claim that *the Excess LOC Proceeds are not property of the Estate*.

22.     Defendants' Motion to Dismiss pursuant to Federal Rule 12(b)(1) as it relates to the Trustee's standing to bring the causes of action in the Amended Complaint should be denied.

**C.     <u>Plaintiff's Claims for Turnover Are Ripe</u>**

23.     In paragraphs 30 and 31 in the Defendants' Brief,  Defendants assert that the Plaintiff's claims are not ripe for consideration by this Court.   This argument is specious at best. Defendants admit that the "entirety of the dispute. . . can fairly be characterized as a dispute regarding the interpretation of the terms of the Master Agreement."[17]

24.     The case law cited by Defendants for the proposition of ripeness cannot by any stretch of

---

[15]     *See* First and Second Stipulations, Docket Nos.136 at 2, ¶ 3 & 162 at 2 ¶ 4.

[16]     *See MV Stacey D v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 334-35 (5th Cir. 2004).

[17]     *See* Defendants' Brief at 19, ¶ 31.

the imagination apply to the Amended Complaint.  For example, Defendants cite to the

Fifth Circuit's standard given in *Monk v. Huston* for dismissal "for lack of 'ripeness'

when the case is abstract or hypothetical."[18]   In *Monk v. Huston*,  the Fifth Circuit

discusses one of its previous cases, *Smith v. City of Brenham*,[19] in which the court had

concluded that a case was not ripe because damages were hypothetical.  The Fifth Circuit

reasoned in *Smith* that because no deprivation of property had yet occurred and would not

occur at least until the permit process had run its course, the case was not ripe.

25.     *Smith* is distinguishable from this Adversary Proceeding in that Defendants undisputedly

        are holding property of this Estate and the Trustee is seeking a turnover of that property.

26.     In fact, Defendants' arguments are self-contradictory.  On the one hand Defendants first

        argue that the Amended Complaint is not ripe for review–an argument of prematurity;

        and then Defendants argue that laches bars certain claims in the Amended Complaint–an

        argument of staleness.[20]   These two arguments are incongruous in the same factual

        context because they lie on opposite poles of the time continuum.  Therefore, it is

        impossible that both arguments could be valid.

27.     In the Amended Complaint, the Trustee requests this Court to liquidate the Estate's

        claims against Defendants and the Withheld LOC Funds–a matter clearly ripe for

        adjudication by this Court.  What other forum could be more appropriate for resolving the

        contract dispute –  given that, as Defendants have admitted, the Excess LOC Proceeds are

---

[18]   *See* Defendants' Brief at 19, ¶ 30.

[19]   *See Smith v. City of Brenham,* 865 F.2d 662, 664 (5th Cir. 1989),

[20]   *See* Defendants' Brief at 35-39.

property of this Estate?  Once the Court has liquidated the various claims under the

Master Agreement, the resulting amount owed to the Estate by Liberty Mutual should be

turned over to the Estate.

28.     If Defendants are proposing a different forum for liquidating the Breach of Contract

claim, there clearly is no more appropriate forum.

29.     If Defendants are proposing that the issues are not ripe because the parties should settle

the dispute on their own, such a suggestion cannot be supported by the facts in view of

the negotiations regarding the Excess LOC Proceeds.  These parties have made as much

progress as they can make without the Court's assistance in resolving their respective

claims to the Withheld LOC Funds.

30.     In making a determination of ripeness, the Court must consider "the fitness of the issues

for judicial decision and the hardship to the parties of withholding court consideration."[21]

It would be a hardship to the Estate to continue the negotiations with Defendants in that it

will unnecessarily prolong this Estate.  There is no further factual development required

within the meaning of *Monk v. Huston*.[22]   Although there may be facts in dispute

regarding the Amended Complaint, that does not equate to a need for further factual

development for this case to be ripe.  As this Court knows from experience, factual

disputes are far from uncommon in litigation that certainly is ripe for review.   This, in

fact, is the chief purpose of the judicial system - to resolve controversies.[23]

---

[21]   *See  Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003).

[22]   *Compare* Defendants' Brief at 19, ¶ 30, discussing lack of ripeness when further factual development is required.

[23]   *See* U.S. Constitution, Art. III (giving the Courts the power to resolve controversies).

### III.   Defendant's Rule 12(b)(6) Motion to Dismiss

31.   Defendants argue that the Amended Complaint should be dismissed for failure to state a

claim on which relief can be granted.  They base this argument on several grounds.

Defendants claim that some of the causes of action in the Amended Complaint are i) not

cognizable claims, ii) barred by limitations, iii) premised on conclusory statements that

lack sufficient factual allegations to give rise to plausible claims for relief.  These

arguments are without merit, as discussed in Section III of this Brief.

### A.   Unrecognized Claims

32.   Defendants argue that there is no independent claim for breach of duty of good faith

under the UCC and for interest.

### (a)   Plaintiff's Claims for Breach of Duty of Good Faith under the UCC

33.   In paragraphs 33 through 36 of Defendants' Brief, Defendants correctly note that the

Trustee intended to reference Section 1.304 of the Commerce Code, instead of Section

1.203.

34.   Upon further research, the Trustee agrees that there is no independent cause of action for

breach of duty of good faith under the UCC and therefore withdraws that cause of action.

35.   Instead, the Trustee reasserts the Estate's claim for breach of duty of good faith under the

common law in the Second Amended Complaint, paragraphs 66 through 72.

### (b)   Plaintiff's Claim for Interest

36.   In paragraph 37 of the Defendants' Brief, Defendants argue that there is no separate

cause of action for interest.

37.   The Trustee has realleged his request for interest as damages under the breach of contract

claim in his Second Amended Complaint, paragraphs 31 through 32.

**B.**     **Claims Barred by Limitations and/or Claims Lacking Plausibility**

38.     In paragraphs 38 through 43 of Defendants' Brief, Defendants argue that many of the

Trustee's claims are either barred by limitations or lack plausibility.   The Trustee's

position is that all of his claims under the Amended Complaint are plausible and have

been further developed in the Second Amended Complaint.

39.     Despite arguing in the same pleading that the Trustee's claims have not yet accrued and

are therefore premature, Defendants also argue erroneously that some claims are either a)

barred by  limitations because they accrued too long ago, or b) lack sufficient factual

allegations to support them to make them plausible claims on which the Trustee can

recover.[24]    As set forth below, Liberty Mutual's Rule 12 Motion on these grounds

should similarly be denied.   Further, the Trustee has expounded on the facts related to all

causes of action in the Second Amended Complaint.

**(a)     Plaintiff's Claims for Breach of Contract and Interest**

40.     In paragraph 45 of Defendants' Brief, Defendants state that the "Plaintiff alleges no facts

supporting Debtor's alleged compliance with the terms of the Master Agreement."  In

footnote 9, Defendants assert that Debtor's failure to provide a substitute letter of credit

prompted and authorized Defendants to draw down the Letter of Credit.

41.     The Trustee alleged sufficient facts to state that it had complied with the Master

Agreement.  In paragraph 10 of the Amended Complaint, the Trustee specifically pled:

> *To secure its Obligations under the Master Agreement, U.S. Liquids was required*

---

[24]     *See* Defendants' Brief at 22-39.

*to and did deliver an irrevocable Letter of Credit, issued by Bank of America, N.A. ("BANA"), to Liberty Mutual, naming Liberty Mutual as the beneficiary.*

42.   The Trustee further alleged in paragraph 11 of the Amended Complaint that, when Liberty Mutual sought to draw down the full amount of the Letter of Credit, it was able to receive $5,248,214.87.

43.   Finally, in paragraphs 14 and 15 of the Amended Complaint, the Trustee alleged that based on a determination by Liberty Mutual that it did not need to hold excess funds, it returned $3,436,994.08.

44.   While the Trustee did not make the conclusory allegation that the Debtor complied with all terms under the Master Agreement he sufficiently alleged facts which would state a plausible claim that this had occurred.

45.   "A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform."[25]   The facts pled by the Trustee establish a plausible claim for breach of contract.[26]   Moreover, the Trustee has alleged additional facts regarding Liberty Mutual's breaches in the Second Amended Complaint, paragraphs 24 through 38, related to these causes of action.

46.   With regards to the Trustee's claim for interest on the full Excess LOC Proceeds and the Premium Overpayment, the claim for interest arose with the initial demand for turnover of the Excess LOC Proceeds and the Premium Overpayment.   While Liberty Mutual has

---

[25]   *See Pinnacle Anesthesia Consultants, P.A. v. Fisher*, 309 S.W.3d 93, 99 (Tex. App.–Dallas 2009, writ denied) (internal citations omitted); *see also Case Corp. v. Hi-Class Business Systems of Am., Inc.*, 184 S.W.3d 760, 770 (Tex. App.–Dallas 2005, writ denied).

[26]   *See* Amended Complaint at  8 - 9, incorporating by reference all prior factual paragraphs in the Amended Complaint.

eventually turned over nearly $3.9 million of those Excess LOC Proceeds, the Parties entered into a stipulation that nothing about that turnover was intended to impair the Estate's claims for interest, as those claims were expressly being reserved.[27]   These interest payments relate directly to the wrongfully withheld funds - which obligation was not extinguished by Liberty Mutual's eventual turover of some of the Excess LOC Proceeds.

47.    The rule in Texas is that prejudgment interest will be allowed as damages when the principal damages are determinable and established at a definite time, either by rules of evidence or known standards of value.   When such is the case, interest is recoverable from the date of the injury."[28]   *"Such interest (as damages) may only be recovered where there is either a specific claim for the interest, or a prayer for general relief and a claim for damages in such a sum as to include interest as well as specific damages."*[29]

48.    The Trustee clearly has pled a specific claim for interest, as damages, as allowed under Texas law.   The portion of Defendants' Motion to Dismiss as it relates to the interest pled for by the Trustee should be denied.

49.    In paragraphs 46 through 52 of the Defendants' Brief, Defendants argue that the statute of limitations has expired.

50.    The burden of proving the date of accrual of an action is on the party asserting the

---

[27]   *See* First and Second Stipulations, Docket Nos. 136 & 162.

[28]   *See Laredo Hides Co., Inc. v. H&H Meat Products Co., Inc.*, 513 S.W.2d 210, 222 (Tex. App.–Corpus Christi 1974, writ ref'd N.R.E.) (internal citations omitted).

[29]    Id. at 222 (internal citations omitted and emphasis supplied); *see also Neely v. Jacobs,* 673 S.W.2d 705,709-10 (Tex. App.-- Ft. Worth 1984, no writ history).

limitations defense. "A party asserting limitations must not only establish the applicability of the limitations statute, but must, as well, prove when the opponent's cause of action accrued in order to demonstrate the bar of limitations."[30]

51.    In the instant case, the limitations period did not start to run until Defendants *distinctly* and *unequivocally* refused to return the Withheld LOC Funds with interest upon the Trustee's request.[31]   Defendants have parceled out the Excess LOC Proceeds and the Premium Overpayment over a period of two years, 2007 - 2009 - refusing the entire time to pay the interest called for in the Master Agreement.   It was not until 2010 that Defendants outright refused to return the Withheld LOC Funds plus interest on both the Excess LOC Proceeds and the Premium Overpayment.

52.    The Trustee specifically reserved the right to assert a claim for interest in both the First and Second Stipulations approved by this Court.    The Trustee would assert that the statute of limitations did not begin to run until Defendants refused to turn over the Withheld LOC Funds plus interest on both the entire Excess LOC Proceeds and the Premium Overpayment in 2010.

53.    The Trustee is entitled to damages for Defendants' breach of the Master Agreement and interest on the damage award.   The portion of Defendants' Motion to Dismiss regarding the Trustee's causes of action under breach of contract and interest damages thereon should be denied.

54.    Alternatively and without waiving the foregoing, the Master Agreement governs the

---

[30]   *See Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex. App.–Houston [1st Dist.] 1984, writ ref'd N.R.E.).

[31]   *Id.*

accrual of the breach of contract cause of action by its own terms.[32]   The Master

Agreement specifies the actions required of the parties in the event that *a dispute should*

*arise* as to an amount due under the Master Agreement.[33]

55.     This provision of the Master Agreement specifies that the insured (the Debtor) provide

written notice to Liberty Mutual indicating the nature and amount of the dispute.  With

respect to the Excess LOC Proceeds, the Trustee (who steps into the shoes of the Debtor)

did not even have knowledge of the amount in dispute until Defendants began to

communicate with the Trustee after he filed the Joint Motion with BofA to compel

Defendants to designate a representative for a Rule 2004 Examination on May 24, 2007.

56.      Accordingly, no dispute could arise to trigger any limitations until the Trustee had

information enough to send written notice to Liberty Mutual under the Master Agreement

to inform Liberty Mutual about the nature and amount of the dispute.  This date occurred

after May of 2007 and by September 12, 2007 when Defendants, BofA, and the Trustee

filed the First Stipulation.  At the earliest under the actual terms of the Master

Agreement, no cause of action accrued until some time in August or September of 2007.

This would put the four-year limitation at August of 2011 at the earliest.

57.     In the alternative and without waiving the foregoing, the Trustee would assert that, at the

very least, Defendants' partial turnover of proceeds followed by a continuing refusal to

turn over the Withheld LOC Funds is a continuing breach under Texas law.   As such, the

Trustee is at least entitled to damages during the four years prior to filing the original

---

[32]   *See* Amended Complaint at 4, ¶ 9.

[33]   *See id.*

Complaint.   The Texas courts have clearly held that: "[i]f a continuing breach has occurred then appellants would be entitled to damages from four years prior to the filing of their original petition."[34]

58.    The Trustee would submit that at the very least, the Estate is entitled to damages for breach of contract and interest damages thereon for at least the four years prior to the Trustee filing the Original Complaint.

59.    Perhaps more importantly, Liberty Mutual should be stopped from attempting to escape liability on an alleged limitations basis when the claims have not been dormant or stale. To the contrary, the Trustee and BofA have repeatedly tried to obtain relief from Liberty Mutual outside of this Court, and Liberty Mutual under the guise of partial cooperation, has tendered partial amounts of monies back to the Estate each time, but avoided a complete turnover of the funds.   By stringing along the Trustee and BofA through engaging them in a dialogue to obtain certain partial turnover of proceeds voluntarily, Liberty Mutual is now asking this Court to punish the Trustee for his efforts to obtain Estate assets outside this Court by seeking a finding that the claims are time-barred.

60.    Based upon the conduct by the Defendants, their reliance on a statute of limitations defense should fail.

### (b)    Plaintiff's Claim for Unjust Enrighment

61.    In paragraph 53 of the Defendants' Brief, Defendants claim that there is no common law cause of action for unjust enrichment under Federal law.   This is incorrect.   Texas

---

[34]   *See Dvorken v. Lone Star Industries, Inc.*, 740 S.W.2d 565, 567 (Tex. App.–Ft. Worth 1987, writ ref'd); *Republic Parking Systems of Texas, Inc. v. Medical Towers, Ltd*, 2004 WL 2358315at *8 (Tex. App.–Houston [14th Dist.] 2004).

district courts have recognized a federal common law unjust enrichment cause of action at least as it applies to ERISA cases.[35]

62.    Moreover, the Trustee would submit that the choice of law is irrelevant in that the elements for unjust enrichment are essentially the same under federal common law or Texas law.[36]   In the Second Amended Complaint, paragraphs 39 through 46, the Trustee has pled a cause of action under both Federal common law and Texas law.

63.    Under Texas law, "Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits.[37]   "Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain."[38]

64.    Similarly under Federal Common law, a party is unjustly enriched when another party "had a reasonable expectation" of receiving the payment in question, the party retaining that payment "should reasonably have expected to pay" and nonpayment by the retaining party would be against "society's reasonable expectations."[39]

---

[35]   *See Health Care Service Corp. v. TAP Pharmaceutical Products, Inc.*, 274 F.Supp.2d 807, 817 (E.D.Tex. 2003); *UNUM Life Insurance Company of Am. v. Long*, 227 F.Supp.2d 609, 613 (N.D.Tex. 2002).

[36]   *See, e.g., Benedictine College, Inc. v. Century Office Products,Inc.*, 853 F.Supp. 1315, 1320 n. 2 (D.Kan. 1994) ("The court notes that among the parties a dispute exists concerning whether Kansas or Missouri provides the applicable law in the case.  Missouri and Kansas have both adopted Article Nine of the UCC, so the choice of law issues is irrelevant to the determination of the issues."); *see also In re Fleming Companies, Inc.*, 347 B.R. 163, 168 (Bankr. D.Del. 2006) ("The Court agrees with the Defendant's argument that the question of whether a bankruptcy court should apply federal common law choice of law principles is irrelevant here because both Delaware and federal choice of law principles apply the 'most significant relationship test'").

[37]   *See City of the Colony v. North Texas Municipal Water* District, 272 S.W.3d 699, 731, (Tex. App. -- Ft. Worth  2008) (citing *Villarreal v. Grant Geophysical, Inc.*, 136 S.W. 265, 270 (Tex.App.--San Antonio 2004, pet. denied)).

[38]   *Id*.

[39]   *See Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 993-94 (4th Cir. 1990); *U.S. ex rel. Williams v. Renal Care Group*, 2010 WL 1062634, n. 11 (M.D. Tenn. 2010).

65.     Under either test, upon construing all allegations and facts in the Amended Complaint in a light most favorable to the non-movant - the Trustee - and indulging the Trustee's every inference, the Amended Complaint sufficiently asserts facts to overcome Defendants' Motion to Dismiss.   Defendants retained that which in good conscience and under "society's reasonable expectations" - the Excess LOC Proceeds -  should belong to the Estate.   And the Trustee has pled that Defendants not only retained the Excess LOC Proceeds belonging to the Estate but also retained the Premium Overpayment.

66.     With regards to the allegations that the Trustee is barred from bringing an unjust enrichment cause of action by the statute of limitations, the Trustee hereby incorporates the Responses set forth in paragraphs 47 & 48, *supra*.

67.     Defendants' Motion to Dismiss as it pertains to the Trustee's cause of action for unjust enrichment should be denied.

### (c)     Plaintiff's Claim for Conversion

68.     In paragraphs 58 through 60 of Defendants' Brief, they assert that the Trustee fails to allege sufficient facts and makes conclusory statements that the Excess LOC Proceeds and Premium Overpayments are property of the Estate.

69.     The Trustee alleged sufficient facts to support a claim for conversion of all funds currently held by the Defendants.   In paragraph 8 the Trustee specifically pled that Liberty Mutual agreed to reimburse U.S. Liquids for any overpaid premiums, citing the Master Agreement at ¶ 5(a) which required Liberty Mutual to notify U.S. Liquids regarding amounts needed to be reimbursed.

70.     In paragraphs 15 and 16 of the Amended Complaint, the Trustee set forth the amounts

ultimately repaid by Liberty Mutual and the remaining balance on the Excess LOC
Proceeds that Liberty Mutual continues to withhold from this Estate.

71.    In paragraph 35 of the Amended Complaint, the Trustee specifically enumerated the
elements for a claim for conversion.   In paragraph 36 the Trustee set forth how  Liberty
Mutual wrongfully exerted and continues to exert dominion over the Excess LOC
Proceeds, including those funds which Liberty Mutual continues to withhold from this
Estate.

72.    The Trustee did not make the conclusory allegation that Liberty Mutual converted funds
belonging to this Estate, he sufficiently alleged facts which would state a plausible claim
that this had occurred.   These allegations follow Texas law.

73.    The Texas courts have held that "Where the qualified or conditional refusal is not
reasonable or justifiable under the circumstances, ***and amounts to a denial of plaintiff's
rights in the property***, it will be sufficient to sustain an action for conversion, and it is for
the jury, under proper instructions from the court, to pass on the existence of the
qualification and its reasonableness."[40]

74.    As set forth in paragraph 17, *supra*, the pre-petition Debtors made a collateral assignment
of the policies underlying the Letter of Credit to BofA, not an outright assignment.
Therefore, post-petition the Excess LOC Proceeds became property of the Estate
pursuant to 11 U.S.C. §541(a).   Certainly the refusal by Defendants to turn over even a
portion of the Excess LOC Proceeds until after the Trustee was forced to petition this
Court to obtain information, and then to turn over a portion of the proceeds only after a

---

[40]   *See Earthman's Inc. v. Earthman*, 526 S.W. 2d 192, 204 (Tex. App.–Houston [1st Dist.] 1975)
(emphasis added).

Court approved stipulation, is not reasonable or justifiable under *any* circumstances.

75.    To this date Defendants continue to hold the Excess Proceeds - a clear conversion of the

Debtor's, and therefore the Estate's, property.

76.    Defendants do not allege any basis for their right to hold the funds and simply deny the

Plaintiff's right to the funds.   Hence, the Trustee's allegations are sufficient to sustain an

action for conversion.

77.    As to Defendants' claim of a statute of limitations defense, the burden of proving the date

of accrual of an action is on the party asserting the limitations defense.   "A party

asserting limitations must not only establish the applicability of the limitations statute,

but must, as well, prove when the opponent's cause of action accrued in order to

demonstrate the bar of limitations."[41]

78.    In the instant case, the limitations period did not start to run until Defendants *distinctly*

and *unequivocally* refused to return the Withheld LOC Funds with interest on both the

Withheld LOC Funds and the Premium Overpayment upon the Trustee's request.[42]

Defendants have parceled out the Excess LOC Proceeds and the Premium Overpayment

over a period of two years, 2007 - 2009.   It was not until 2010 that Defendants outright

refused to return the Withheld LOC Funds with interest on both the Excess LOC

Proceeds and the Premium Overpayment.     Therefore, the statute of limitations did not

begin to run until Defendants refused to turn over the Withheld LOC Funds with interest

on both the entire Excess LOC Proceeds and the Premium Overpayment in 2010.

---

[41]   *See Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex. App.–Houston [1st Dist.] 1984).

[42]   *Id*.

79.     Defendants' Motion to Dismiss as it relates to the Trustee's action for conversion should be denied.

### (d)     Plaintiff's Claim for Violation of the Texas Insurance Code

80.     In paragraphs 64 through 72 of Defendants' Brief, Defendants make much of the fact that the Amended Complaint does not reference multiple sections of the Texas Insurance Code.  Nonetheless, their accurate assessment of the Trustee's claim in this respect demonstrates that the Trustee has asserted a cause of action that Defendants recognize as being a claim for unfair practice on their part under the Insurance Code.

81.     Defendants correctly note that the Trustee's cause of action for Defendants' violation of its duty of good faith under the Texas Insurance Code in Section 541.060 is granted under Texas Insurance Code Section 541.151(1).[43]   However, Defendants incorrectly argue in the same paragraph that the Trustee failed to allege both the breach of that duty under Section 541.060 and resulting damages.[44] The Trustee did allege breach of the duty and damages in the Amended Complaint.

82.     In paragraph 68 of the Defendants' Brief, Defendants also argue that the Trustee's statements that they took excessive time in settling any claims to the Excess LOC Proceeds is "purely conclusory."[45]   In paragraph 11 of the Amended Complaint, the Trustee has alleged that Defendants drew down the Letter of Credit two months before

---

[43]   *See* Defendants' Brief at 33, ¶ 67.

[44]   *See* Amended Complaint at 12-13, incorporating by reference all previous paragraphs and asserting specific damages in ¶ 50.

[45]   *See* Defendants' Brief at 33, *¶* 68.

the filing of this Bankruptcy Case on August 12, 2004.[46]   Accordingly, given only the

two dates in that statement (June and August of 2004) and the date of this Complaint,

filed as Docket No. 6 in this Adversary Proceeding on 5/02/11, when Defendants still

refuse to return some of the Excess LOC Proceeds almost seven (7) years after drawing

down the funds, the protracted time period in settling these claims is quite obvious.

83.     These dates are clear from the Amended Complaint, but these are not the only facts the

Trustee has alleged in the Amended Complaint related to that issue.  The Trustee has

alleged detailed facts to describe protracted problems in communicating with Defendants

about the amount of Excess LOC Proceeds they had been holding during the Bankruptcy

Case and the various times Defendants finally turned over some of those funds during a

time frame from 2007 to date.[47]

84.     Given these dates and facts as alleged in the Amended Complaint, the "excessive time"

alleged cannot be characterized as purely conclusory.   Perhaps more importantly, the

appropriate challenge on any allegation that Defendants contend lack factual support is to

file a Rule 12(e) motion for more definite statement, as the remedy for "conclusory

allegations" is not to dismiss the Amended Complaint under Rule 12(b)(6).

85.     In paragraph 70 of Defendants' Brief, Defendants further assert that the statute of

limitations has run on this cause of action.[48]   Defendants correctly note that either the

second anniversary of the date the unfair practice occurred or the date plaintiff should

---

[46]   *See* Amended Complaint at 5.

[47]   *See* Amended Complaint at 6-7, ¶¶ 12-16.

[48]   *See* Defendants' Brief at 34-35, ¶¶ 70-72.

reasonably have discovered that these practices occurred is the deadline for filing this cause of action. However, once more Defendants incorrectly argue when that the cause of action accrued.

86.  Defendants say that the statute began to run in June 2004 when they drew down the Letter of Credit, making limitations run in two years and 180 days, ending in December of 2006.[49]  When Defendants drew down on the Letter of Credit, the Bankruptcy Case was not yet filed. Moreover, neither the Debtor nor the Trustee would have been able to predict Defendants' protracted delay in turning over the Excess LOC Proceeds at that time. The breach of the duty to resolve the claims timely had not occurred by the time the Letter of Credit was drawn down.

87.  Moreover, Defendants failed to communicate with the Trustee from the time they drew down the Letter of Credit in 2004 until the filing of the Joint Motion three years later in May of 2007. The date Defendants claim the statute ran in 2006 fails to allocate any time for the Trustee to discover the breach of the duty owed by Defendants within the specified terms of the Statute. Even when communications began, Defendants resisted returning any of the Excess LOC Proceeds until September of 2007 and failed to return anything further to the Estate until April of 2009–almost another two years.

88.  Without a crystal ball the Trustee had no way to discover the length of time Defendants would resist complying with their obligations under the Master Agreement until they made it clear in 2010 that they would absolutely not pay the interest prescribed under the Master Agreement. Partial tendering of payment, as alleged by the Trustee, does not

---

[49]  *See id.* at 35, ¶ 72.

demonstrate an outright refusal; thus, sufficient facts have been alleged to allow an inference that accrual of these claims occurred only after the final and absolute refusal occurred on or about February 25, 2010.   Accordingly, limitations on the cause of action under the Insurance Code will not run until 2012.

89.   Accordingly, the Trustee has alleged a cognizable and plausible cause of action under the Texas Insurance Code for Defendants' breach of their duty of good faith and alleged sufficient facts to support the contention that the claim has been timely asserted.

90.    Therefore, upon construing every fact in favor of and giving every deference to the non-movant, Defendants' Motion to Dismiss the Insurance Claim should be denied.

### (e)      Plaintiff's Claims for Surcharge and Turnover

91.   In paragraph 73 of Defendants' Brief, Defendants allege that the Trustee has not pled facts sufficient to support causes of action for turnover and surcharge.   This argument lacks merit as the Amended Complaint clearly alleges the simple facts to establish these claims.  In paragraph 11 of the Amended Complaint, the Trustee alleged that Defendants drew down the Letter of Credit two months before the Petition Date of August 12, 2004.[50] Given only those two dates (June and August of 2004) and the date the Complaint was filed in 2011, it is obvious that Defendants have held and still hold some of the Excess LOC Proceeds belonging to the Estate.  In fact, Defendants have held the Withheld LOC Funds for almost seven (7) years following the date they drew down the Letter of Credit.

92.   These are not the only allegations in the Amended Complaint related to this issue.  In paragraph 15 of the Amended Complaint, the Trustee also goes into detail to describe a)

---

[50]   *See* Amended Complaint at 5.

protracted problems in communicating with Defendants about the amount of the Excess
LOC Proceeds they were holding during the Bankruptcy Case and b) the various times
Defendants finally agreed to turn over some of those funds appearing to voluntarily
cooperate once focused on the issues. [51]   In the Second Amended Complaint, the Trustee
adds further allegations related to this claim.

93.     The facts are clear and simple:  Debtors provided Defendants with the Letter of Credit in
connection with the Master Agreement; Defendants drew down the entire Letter of Credit
approximately 2 months prior to the Petition Date, although the claims asserted against
the underlying policies were small in comparison to what Debtors owed under the Master
Agreement.   The Trustee has repeatedly, over the past four (4) years, requested the
return of the Excess LOC Proceeds; Defendants have returned the majority of the funds
through two Stipulations and acts of voluntary turnover; but Defendants persist in
refusing to turn over the Withheld LOC Funds or any contractually owed interest.

94.     The Trustee cited to the sections of the Bankruptcy Code that describe the duties of a
custodian of estate funds with knowledge of the Bankruptcy Case in Section 543.  The
Court can take Judicial Notice of its own docket to establish that Defendants failed to
comply with these duties.[52]   And the Trustee alleged that the Court is required to
Surcharge Defendants under section 543(c) for their violations of Sections 543(a) and
(b).[53]

---

[51]   *See id.* at 6-7, ¶¶ 12-16.

[52]   *See id.* at 15, ¶¶ 59-62.

[53]   *See id.* at 16, ¶¶ 64-65.

95.     Although Defendants knew about the Bankruptcy Case and have disbursed certain of the

Excess LOC Proceeds to themselves based on their own perception of the Debtor's

Obligations under the Master Agreement, Defendants never filed an accounting with the

Court or got approval of those disbursements from this Court, contrary to their duties

under section 543.   Taking judicial notice that Defendants have failed to comply with

these requirements, the Court is required to Surcharge Defendants and order that they

turn over the property of the Estate they continue to hold, including interest on the entire

amount of the Excess LOC Proceeds and Premium Overpayment under the clear terms of

the Master Agreement.

96.     The facts alleged in the Amended Complaint are sufficient to establish also that

Defendants' drawing down of the Letter of Credit makes them a "custodian" of the

Excess LOC Proceeds within the definition of 11 U.S.C. §101(11).[54]   Defendants

undisputedly took custody of the Excess LOC Proceeds under the terms of the Master

Agreement, making them a "trustee, receiver, or agent. . . under a contract [the Master

Agreement]. . .that is authorized to take charge of property of the debtor for the purpose

of enforcing a lien against such property."  *See* 11 U.S.C. §101(11).  Therefore, the

Amended Complaint contains sufficient allegations of fact to establish that Defendants

are "custodians" of the Excess LOC Proceeds and subject to the duties and penalties of

section 543.   Further, the Second Amended Complaint, paragraphs 73 through 82,

expands the Trustee's allegations on this claim.

97.     This conclusion is consistent with the scant case law on this issue.  The Bankruptcy Court

---

[54] *See id.* at 4-5, ¶¶ 8-11.

for the Southern District of New York has held in favor of a trustee asserting similar claims against a custodian of estate funds.  The bank in that case was holding as escrow agent certain estate property in the form of proceeds from the sale of an estate asset.[55] The Bankruptcy Court concluded that the bank was a custodian under section 101(11) (formerly section 101(10)) and was required to comply with section 543 as a result.[56]

98.  Defendants have held millions of dollars in Excess LOC Proceeds belonging to this Estate and sat silently with knowledge of the Bankruptcy Case for years.  They never came forward to offer any of the Estate's assets to which they had no legal right.   But for the efforts of the Trustee and BofA, there is no indication that the Defendants would ever have come forward to reveal to this Court the fact that they were and are holding Excess LOC Proceeds from this Estate.

99.  Further, they have continued to resist the efforts of the Trustee to recover that property. They certainly were not entitled to all of the Excess LOC Proceeds, so they must have been and must still be "custodians" of that property within the meaning of section 101(11), as was the bank in *DeLancey.*   As custodians of the Excess LOC Proceeds they were required to comply with the duties under section 543(a) and (b) that they completely ignored.

100.  Given the law and the facts included in the Amended Complaint, the cause of action for Surcharge and Turnover under section 543 is both plausible and cognizable.   The Trustee has expanded on the surcharge and turnover claims in the Second Amended

---

[55]   *See Barr v. Juniata Valley Bank (In re DeLancey),* 77 B.R. 424, 429-30 (Bankr. S.D.N.Y. 1987).

[56]   *See id.*

Complaint.

101.   With regard to Defendants' contention that the Trustee's claim for turnover and

surcharge under sections 542 and 543 are not timely, the Trustee would reply that there is

no time limit for bringing a turnover action under the Bankruptcy Code.    As held in

*Maxim Truck*, "§543 does not establish a time limit by which a Trustee [i]s required to

seek turnover."[57]    Neither does section 542 set forth an express period of limitation

within which one must sue for a turnover.[58]

102.   Turnover claims (and similarly claims for surcharge) do not ripen until "a determination

by the Court that the property in dispute is, in fact, property of the estate."[59]    As this

Court has not made a definitive ruling on whether the Withheld LOC Funds are property

of the Estate, laches is inapplicable.

103.   Finally, Defendants cite *Mushroom Transport* in support of their limitations defense.

The court in *Mushroom Transport* clearly holds that "[t]he party asserting laches as a

defensive bar must establish (1) inexcusable delay in bringing the action and (2)

prejudice."[60]   This argument made by Defendants is disingenuous, given that 1) the delay

in turning over the Excess LOC Proceeds was caused by Defendants themselves, and 2)

their continued use of the Withheld LOC Funds is clearly prejudicial to the Estate, rather

than to Defendants.

104.   Defendants' Motion to Dismiss as it relates to the Section 542 and 543 claims being

---

[57]   *See In re Maxim Truck Co., Inc.*, 415 B.R. 346, 357 (Bankr. S.D.Ind. 2009).

[58]   *See In re De Berry*, 59 B.R. 891, 898 (Bankr. E.D.N.Y. 1986).

[59]   *See Maxim Truck*, 415 B.R. at 357 n.4.

[60]   *See In re Mushroom Transport Co., Inc.*, 382 F.3d 325, 337 (3rd Cir. 2004).

barred by laches should be denied.

**(f)** **Adequate Protection**

105. With regards to Defendants request for adequate protection in paragraph 80 of their Brief, that request is premature. "While the creditor may suggest terms of adequate protection, it may not unilaterally condition the return of the property on its own determination of adequate protection. Any prerequisite to turnover is determined by the bankruptcy court, not by the creditor."[61]

106. Defendants in this case should have turned over the Excess LOC Proceeds and the Premium Overpayment to the Trustee the first time it was requested - in 2007 - rather than "doling" the money out as they saw fit. The case law is clear on this issue. "First the creditor must return the asset to the bankruptcy estate. Then, if the debtor fails to show that he can adequately protect the creditor's interest, the bankruptcy court is empowered to condition the right of the estate to keep possession of the asset on the provision of certain specified adequate protections to the creditor."[62]

107. The United States Supreme Court has mandated that only after turning these funds over to the Trustee did Defendants have the right to seek adequate protection from this Court. The Supreme Court held in *Whiting Pools* that: "Section 542(a) requires [a secured creditor] to seek protection of its interest according to the congressionally established bankruptcy procedures, rather than by withholding the seized property from the debtor's

---

[61] *See Mitchell v. BankIllinois*, 316 B.R. 891, 901, (S.D.Tex. 2004).

[62] *See Thompson v. General Motors Acceptance Corp., LLC.*, 566 F.3d 699, 704 (7th Cir. 2009).

efforts to reorganize."[63]

108.    Rather than following the firmly established law of the land, Defendants failed and

refused to turn over all of the Excess LOC Proceeds despite the Trustee's request for

these funds.   Only now that the Trustee has filed the Amended Complaint against

Defendants do they request adequate protection from this Court with no showing that

there is a need for such protection.

109.    Given their actions in wrongfully withholding Estate assets for an extended period of

years, Defendants' request for adequate protection should be denied.

### IV.    Defendants' Rule 12(e) Motion for More Definite Statement

110.    In paragraphs 81 through 84 of the Defendants' Brief, Defendants' request for a more

definite statement is groundless.  Rule 12(e) motions are generally disfavored and only

proper when the pleading is so vague that a response is not possible.[64]

111.    In contrast to a Rule 12(b)(6) Motion, a Rule 12(e) Motion is appropriate where 'a

pleading fails to specify the allegations in a manner that provides sufficient notice."[65]

112.    In fact, a "motion for more definite statement is generally disfavored and is used to

provide a remedy only for an unintelligible pleadings rather than a correction for lack of

detail."[66]

113.    Given the years the parties have been negotiating over these funds, the discussions,

---

[63]    *See U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 212 (1983).

[64]    *See* 5C Fed. Prac. & Proc. Civ. §1377 (3d ed.).

[65]    *See Pension Advisory Group, Ltd. v. Country Life Ins.Co.*, 2011 WL 649350 (S.D.Tex. 2011). (Internal citations omitted).

[66]    *See Davenport v. Rodriguez*, 147 F. Supp.2d 630, 639 (2001).

stipulations, e-mails and other communications, it is disingenuous for Defendants to argue that the Amended Complaint is so vague or ambiguous that they cannot frame a responsive pleading.   Defendants know exactly what the Trustee is requesting this Court to order - the return of the Withheld LOC Funds with interest on both the entire Excess LOC Proceeds and the Premium Overpayment from the date they were received by Defendants, and attorney's fees for having been forced to file a Complaint to recover funds that should have been immediately turned over to the Trustee at the time of his first request or earlier under section 543(a) and (b).

114.   Defendants' Rule 12(e) Motion for More Definite Statement should be denied.

### V.   Conclusion

115.   In summary, Defendants' Motion to Dismiss Trustee's Amended Complaint for Turnover

of Estate Property or, in the Alternative, Motion for a More Definite Statement should be

denied.   Moreover, any deficiencies in the Amended Complaint have been rectified

through the filing of the Second Amended Complaint.

Respectfully submitted this 24th day of June, 2011.

**TOW & KOENIG, PLLC.**

By:   */s/   Julie M. Koenig*
Julie M. Koenig
Federal ID# 10396
SBA# 14217300
Glenna England Crews
Federal ID# 15313
SBA# 00783898
Rodney Tow, Trustee
Federal ID# 3196
26219 Oak Ridge Drive
The Woodlands, Texas 77380
281/681-9100 (Telephone)
832/482-3979 (Telecopier)
jkoenig@towkoenig.com

Attorneys for the Trustee

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing has been served by Nicole Oakley, a legal assistant in my office, on all of the parties listed below,  via either ECF notification, e-mail, or first class mail, proper postage affixed, on the 24th day of June, 2011.


_____/s/   Julie M. Koenig_____
Julie M. Koenig


Kevin M. Lippman
Zachery Z. Annable
500 N. Akard Street, Ste. 3800
Dallas, Texas 75201-6659