IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| U.S. LIQUIDS, INC., | § | CASE NO. 04-41522-H5-7 |
| | § | |
| DEBTOR | § | (CHAPTER 7) |
| | § | (JOINTLY ADMINISTERED) |
| _____ | § | _____ |
| | § | |
| RODNEY TOW, TRUSTEE, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | Adversary Proceeding No. 11-03135 |
| LIBERTY MUTUAL INSURANCE | § | |
| COMPANY, LIBERTY MUTUAL FIRE | § | |
| INSURANCE COMPANY, LIBERTY | § | |
| INSURANCE CORPORATION, THE FIRST | § | |
| LIBERTY INSURANCE CORPORATION, | § | |
| EMPLOYERS INSURANCE OF WAUSAU, | § | |
| WAUSAU GENERAL INSURANCE | § | |
| COMPANY, | § | |
| WAUSAU UNDERWRITERS INSURANCE | § | |
| COMPANY, WAUSAU BUSINESS | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendants | § | |

## Second Amended Complaint for Turnover of Estate Property

Trustee Rodney Tow, Trustee for the Debtor, US Liquids, Inc., files this Second Amended Complaint against Liberty Mutual Insurance and the other named defendants (collectively, "Liberty Mutual") for the turnover of Estate property, breach of contract, and other related causes of action. In support of this Second Amended Complaint, the Trustee would show the Court as follows:

## I.     Relief Requested

1.     The Trustee files this Complaint seeking damages for various causes of action, including breach of contract, breach of the duty of good faith, conversion, unjust enrichment, violation of the Insurance Code, and surcharge and turnover of a custodian of estate funds, including interest owed to the Estate by Liberty Mutual related to excess Letter of Credit proceeds (the "Excess LOC Proceeds") and the overpayment of insurance premiums (the "Premium Overpayments").  The Trustee, through extensive negotiations, has obtained almost all of the moneys owed to the Estate by Liberty Mutual under a Master Agreement with U.S. Liquids.  Liberty Mutual was holding these moneys in the form of Excess LOC Proceeds and Premium Overpayments.[1]  The Excess LOC Proceeds are property of the Estate.  Despite the explicit terms of the Master Agreement, however, Liberty Mutual continually refuses to turn over to the Estate:

        a) any of the interest specified in the Master Agreement on the Excess LOC Proceeds and the premium overpayment and

        b) the remaining Excess LOC Proceeds.

As a result, the Trustee asserts various causes of action against Liberty Mutual.

## II.     Jurisdiction and Venue

2.     This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §1334(b).  This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (E), (H), (K) and (O).

3.     Venue is proper in this Court under 28 U.S.C. §1409.

---

[1]  These Excess LOC Proceeds also secure the claim of Bank of America, as agent, for itself and the other lenders (collectively, the "Lenders") under a Credit Agreement with U.S. Liquids, dated as of February 3, 1999.

### III.    Parties

4.     Rodney Tow is the Trustee of this Debtor's bankruptcy Estate.  The Trustee may be served via first class mail, postage prepaid, or by facsimile, at the office of his attorney: Julie M. Koenig, Tow & Koenig PLLC, 26219 Oak Ridge Drive, The Woodlands, Texas 77380, jkoenig@towkoenig.com.

5.     Liberty Mutual is a company engaged in the insurance business in the State of Texas, with its principal place of business in Boston, Massachusetts.  Liberty Mutual shall be served through its registered agent for service of process: Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218; through its registered agent in Massachusetts: Corporation Service Company, 84 State Street, Boston, MA 02109; and through its President, Edmund Francis Kelly, 175 Berkeley Street, Boston, MA 02117.  As a matter of courtesy, a copy of this Complaint will also be served on Liberty Mutual's attorneys who have previously appeared in this bankruptcy case: Lee Morris and Kevin Lippman, Munsch Hardt Kopf & Harr, P.C., 3800 Lincoln Plaza, 500 North Akard Street, Dallas, TX 75201-6659.

6.     Pursuant to the Master Agreement for Guarantee of "Deductible" and/or "Loss Limit" Reimbursement #7017, (the "Master Agreement") made the basis of this suit, the term "Liberty Mutual" means Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, or The First Liberty Insurance Corporation, Employers Insurance of Wausau 'A Mutual Company', Wausau General Insurance Company, Wausau Underwriters Insurance Company, or Wausau Business Insurance Company.  However, under the Master Agreement all notices and payments are made to:  Liberty Mutual Insurance Company, 175 Berkeley Street, Boston, Massachusetts 02117.    Edmund Francis Kelly is the President of all of the named Defendants.

## IV.     Factual Background

7.     The Debtor purchased various insurance policies from Liberty Mutual (the "Policies".) [2]  In connection with those Policies, on September 4, 2002, U.S. Liquids and Liberty Mutual entered into a Master Agreement.  (*See* Master Agreement, attached as Exhibit A.)

8.     The Master Agreement guaranteed U.S. Liquids' obligations to Liberty Mutual under all of the insurance policies, and Liberty Mutual agreed to advance part or all of the deductible and/or loss limits for U.S. Liquids related to claims under the policies.  With respect to those advances, U.S. Liquids agreed to reimburse Liberty Mutual for its part of those payments as insured; and Liberty Mutually agreed to reimburse U.S. Liquids for any overpaid premiums  (collectively, the "Obligations").  (*See* Master Agreement at ¶ 5(a), requiring Liberty Mutual to notify U.S. Liquids regarding amounts needed to be reimbursed.)

9.     Section 5(b) of the Master Agreement dictates the parties' means for "settling up" those advances and overpayments.  Specifically it states:

> "Should a dispute arise as to an amount due within the 'Deductible and/or Loss Limit Advance' based on the Policyholder's good faith belief that Liberty Mutual has, because of an administrative error, miscalculated the Deductible and/or Loss Limit Advance, then the Policyholder, after written notice to Liberty Mutual indicating the nature and amount of the dispute, agrees to either:
>
> (1) Pay the Deductible and/or Loss Limit Advance, including the disputed amount, however, if the disputed advance amount is resolved in the Policyholder's favor, Liberty Mutual shall credit the Policyholder such disputed advance plus accrued interest at the prevailing Prime Rate (as published in the Wall Street Journal) plus 1% per annum as of the original receipt date of the disputed

---

[2]  Specifically, the policy numbers are

WA2-69D-004163-010; WC2-691-004163-020; RG2-691-004163-040; AS2-691-004163-030; AC1-691-004163-090;  WA2-69D-004163-011;  WC2-691-004163-021;  RG2-691-004163-041;  AS2-691-004163-031;  AC1-691-004163-091; WA2-69D-004163-012; WC2-691-004163-022; RG2-691-004163-042; AS2-691-004163-032; EH1-691-004163-062; and AV2-691-004163-162.

advance amount to the date said amount is credited to the Policyholder;

(2) Pay the Deductible and/or Loss Limit Advance as billed, net of the disputed amount, however, if the disputed advance amount is resolved in Liberty Mutual's favor, the Policyholder shall remit to Liberty Mutual such disputed advance amount, plus accrued interest at the prevailing Prime Rate (as published in the Wall Street Journal) plus 1% per annum from the original due date of the disputed advance amount to date of remittance to Liberty Mutual."

(*See* Master Agreement at § 5(b).)  This section of the Master Agreement requires Liberty Mutual or U.S. Liquids to pay interest when either of them holds moneys resolved to belong to the other.

10.    To secure its Obligations under the Master Agreement, the parties agreed that U.S. Liquids was required to (and U.S. Liquids did) deliver an irrevocable Letter of Credit to Liberty Mutual, naming Liberty Mutual as the beneficiary.   Bank of America, N.A. ("BANA")[3] issued the Letter of Credit.

11.    In August of 2004 (the "Petition Date"), U.S. Liquids and six other affiliated debtors, whose cases ultimately were jointly administered, filed Voluntary Petitions under Chapter 7 of the Bankruptcy Code (the "Bankruptcy Case").   Rodney Tow was thereafter appointed chapter 7 trustee (the "Trustee") and continues to act in that capacity.  The Trustee has fully administered the assets of the other jointly administered estates in the Bankruptcy Case except for those in the estate of U.S. Liquids of Texas, which the U.S. Trustee is still reviewing.

12.    These jointly administered cases involved numerous litigation matters, as well as a large number of other assets and other administrative issues that fell within the duty of the

---

[3]  In February of 2004, as part of obtaining its credit facility, U.S. Liquids assigned to BANA as collateral all U.S. Liquids' right, title, and interest in any proceeds received or receivable from the Policies, as well as certain rights in the Master Agreement, including U.S. Liquids' rights to sue under the Agreement, and proceeds from the Letters of Credit.  This was a collateral assignment, rather than an absolute assignment.

Trustee. The complexity of this Bankruptcy Case has required the Trustee to spend more time fully administering all these debtors' cases than would have been required in a simpler chapter 7 case.  Nonetheless, during the pendency of this Bankruptcy Case, the Trustee has spent a good deal of time amicably working with Liberty Mutual to make progress on the issues that have ultimately culminated in the need for this Adversary Proceeding in order to achieve closure.

13.     Those issues relate to the fact that two months prior to the Petition Date, Liberty Mutual had drawn down the full amount of the Letter of Credit—a total of $5,248,214.87.  The Trustee has never had an issue with Liberty Mutual's taking that action which it had a legal right to take--drawing down the entire Letter of Credit.   What the Trustee does take issue with Defendants over in this regard is their failure to notify the Bankruptcy Court or the Trustee (in accordance with the Bankruptcy Code and the notification requirements in section 5(a) of the Master Agreement) about the amount of Excess LOC Proceeds belonging to the Estate that Liberty Mutual held.

14.     As Liberty Mutual would eventually reveal to the Trustee, Liberty Mutual had silently retained the bulk of the Letter of Credit proceeds for no justifiable reason.  In fact, as the Trustee learned no earlier than late May or June of 2007, the amount of proceeds Liberty Mutual had used for reimbursement under the Master Agreement during the Bankruptcy Case was only about $1 million, roughly 20% of the proceeds.  Yet Liberty Mutual continued to retain the entire Letter of Credit proceeds through September of 2007.

15.     The Trustee also learned during the same time frame that U.S. Liquids had made Premium Overpayments under the Policies.  As contemplated by the Master Agreement, Liberty Mutual had no right to retain these Premium Overpayments and owed interest on them to the

insured, now the Estate.  But Liberty Mutual held those funds also without notifying the Court or the Trustee.

16.    The history of the facts finally resulting in these overdue disclosures in 2007 by Liberty Mutual had begun earlier when, in 2006, Trustee's counsel made multiple attempts telephonically and by email to open discussions with Liberty Mutual in an attempt to learn if there were Excess LOC Proceeds.  In response to these overtures, no meaningful response from Liberty Mutual was forthcoming.

17.    It was only after the Trustee's counsel was forced to resort to filing a Joint Motion to Compel a Rule 2004 Examination of Defendants' corporate representative (the "Joint Motion") that Liberty Mutual slowly began to disclose the surprising and relevant facts not previously known to the Trustee or this Court about the very large amount of Excess LOC Proceeds Liberty Mutual was holding.

18.    In producing records to the Trustee related to the Rule 2004 Examination, Liberty Mutual finally revealed that, as of June 6, 2007, it had used only roughly $1,051,381.79 to satisfy U.S. Liquids' Obligations under the Master Agreement.  These facts disclosed that Liberty Mutual had secretly been holding for approximately three (3) years $4,196,833.08 in Excess LOC Proceeds") which rightfully belonged to the Estate.

19.    After extended discussions, Liberty Mutual agreed to return some of the Excess LOC Proceeds, but did not provide any interest as required under the Master Agreement.  Thus, in September of 2007, Liberty Mutual returned $3,436,994.08 under the Stipulation and Agreed Order Regarding the Release of Certain Collateral (the "First Stipulation").  Defendants claimed that they needed to retain the rest of the Letter of Credit proceeds to secure any remaining

Obligations of U.S. Liquids.  The parties reserved certain rights in the First Stipulation, including the Trustee's right to request interest.

20.     Throughout the remainder of 2007 and 2008, the Trustee's counsel and counsel for BANA continued discussions with Defendants regarding turning over more of the Excess LOC Proceeds and the Premium Overpayment.  As a part of those negotiations, the Trustee drafted a predecessor to the Complaint that was ultimately filed to initiate this Adversary Proceeding.  In December of 2008, the Trustee circulated the draft Complaint to Defendants' Counsel.  The Trustee informed Defendants that their failure to respond to the draft Complaint by January 12, 2009, would result in the filing of this Adversary Proceeding.

21.     Throughout January, February, and March of 2009, the Parties continued their negotiations.  This resulted in a second turnover under their Second Stipulation and Agreed Order Regarding the Release of Certain Collateral (the "Second Stipulation," dated April 30, 2009).  Under the Second Stipulation, Liberty Mutual returned another $534,084.00, including the $278,000.00 Premium Overpayments that Liberty Mutual had "held in escrow" (together with the earlier transfer by Liberty Mutual in the First Stipulation, the "Returned Funds").  Once more the Parties reserved certain rights under the Second Stipulation, including the Trustee's right to interest on the funds held by Liberty Mutual.

22.     Liberty Mutual still holds the remaining balance of the Excess LOC Proceeds, totaling approximately $503,754.00, as well as accrued interest on these funds and the previously Returned Funds owed by Liberty Mutual to the Estate under the Master Agreement.

### V.      Causes of Action

23.     The Trustee asserts the following Causes of Action for Turnover under Section 542 of the Bankruptcy Code, adopting by reference in each the allegations previously given.

## A.   Count I:  Breach of Contract (Turnover)

24.     The Trustee restates and incorporates paragraphs 1 through 23 as if fully stated in this paragraph.

25.     Under Texas law, "'[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.' " *Smith Intern., Inc. v. Egle Group, LLC,* 490 F.3d 380, 387 (5th Cir.2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.,* 51 S.W.3d 345, 351 (Tex.App.-Houston [1st Dist.] 2001, no pet.)).

26.     Under the legally valid Master Agreement, U.S. Liquids and Liberty Mutual agreed to reimburse each other for their respective Obligations under the Master Agreement and pay interest on the reimbursements.  To secure its Obligations further, U.S. Liquids complied with the agreement and delivered to Liberty Mutual an irrevocable Letter of Credit.  As evidenced by the fact that Liberty Mutual held Premium Overpayments in escrow, Debtor paid (and even overpaid) the premiums due under the underlying insurance policies.

27.     Once the outstanding Obligations of U.S. Liquids have been met after Liberty Mutual drew down the Letter of Credit, Liberty Mutual has no legal claim to the Excess LOC Proceeds.  Nor can Liberty Mutual hold Premium Overpayments under the Master Agreement.

28.     By failing to return the Excess LOC Proceeds and the Premium Overpayments promptly and pay Plaintiff the interest required under the Master Agreement for holding them, Liberty Mutual has breached the Master Agreement and the Policies.

29.     Additionally, Liberty Mutual breached the Master Agreement by failing to notify U.S. Liquids or the Trustee, who stands in the shoes of the Debtor, of Premium Overpayments or

the amounts it was withdrawing from the Letter of Credit proceeds to pay Obligations in accordance with section 5(a) of the Master Agreement.

30.     These breaches have damaged the Estate and its secured creditor, BANA, to the extent of the remaining Excess LOC Proceeds plus the contractual interest on the entire Excess LOC Proceeds and the Premium Overpayments along with pre- and post-judgment interest, attorneys' fees, and litigation expenses.  Had Liberty Mutual notified the Trustee in accordance with the Master Agreement, the Estate and/or BANA could have collected the Excess LOC Proceeds earlier and earned interest during the time Liberty Mutual has held them, knowing they were not needed to meet the Obligations.

31.     The Master Agreement in section 5(b) contemplates the payment of interest, in the amount of Prime plus 1%, in the event that a dispute arises regarding the amount due within the "Deductible and/or Loss Limit Advance."    Therefore, it is clear that Liberty Mutual and the Debtor intended that interest would be paid in circumstances where one party held funds belonging to the other.  Liberty Mutual wrongfully withheld funds belonging to the Estate for over three years before finally turning a portion of the funds over to BANA in September of 2007.  Therefore, in accordance with the obvious intent of the parties in the Master Agreement, Liberty Mutual is responsible for interest on the Returned Funds and all Estate funds currently held.

32.     The Trustee calculates the interest from the date Liberty Mutual drew down the Letter of Credit through March 5, 2011 on the Excess LOC Funds and the Premium Overpayments at the default rate to be $2,112,051.54 and at the non-default rate to be $1,778,399.04.

33.    Upon the filing of the Petition, the proceeds of the Letters of Credit, drawn down by Liberty Mutual, constituted property of the Estate under Section 541(a).  In view of this law, Liberty Mutual held those funds in trust for the Estate and, therefore, had an obligation to preserve those funds.

34.    That obligation includes, but is not limited to, maintaining those funds in an interest-bearing account.  Therefore, any interest accrued on the Returned Funds and any Estate funds still held by Liberty Mutual constitutes property of the Estate under Section 541 of the Bankruptcy Code and should be turned over to the Trustee.

35.    The Excess LOC Proceeds, the Premium Overpayments, and the interest on  all those funds once held or being held by Liberty Mutual constitute Estate property within the meaning of Section 541 of the Bankruptcy Code,[4] some of which are being wrongfully withheld by Liberty Mutual.

36.    Under Bankruptcy Code Section 542(a), Liberty Mutual must turn over the remaining Excess LOC Proceeds and interest on the entire Excess LOC Proceeds and the Premium Overpayments to the Trustee for the Estate and its creditors.

37.    Under Texas common law and under the Bankruptcy Code, Liberty Mutual must turn over the remaining Excess LOC Proceeds and all interest on the Excess LOC Proceeds and Premium Overpayments, including the funds turned over previously to the Estate and/or its creditor, BANA.

38.    Texas Civil Practices and Remedies Code Section 38.001 also entitles the Trustee and BANA to recover their attorneys' fees, costs, and litigation expenses required to bring this action against Liberty Mutual.

---

[4]  Eventually, all or part of any Excess LOC Proceeds and the Overpayments recovered in this action will be used to satisfy the secured claim of the BANA, who has superior rights to these funds as a secured creditor and as the Assignee under the Assignment.

**B.**     **Count II:  Unjust Enrichment (Turnover)**

39.     The Trustee restates and incorporates paragraphs 1 through 38 as if fully stated in this paragraph.

40.     In the alternative, Liberty Mutual has been unjustly enriched at the expense of the Estate and its secured creditor, BANA, by wrongfully retaining the Excess LOC Proceeds and the Premium Overpayments for longer than appropriate.  To establish the equitable remedy of unjust enrichment under federal common law, a plaintiff must show that (1) he had a reasonable expectation of payment, (2) the defendant should reasonably have expected to pay, or (3) society's reasonable expectations of property would be defeated by nonpayment.  *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 993-94 (4th Cir. 1990). Under Texas law a plaintiff may recover for unjust enrichment when a party has obtained a benefit from another by fraud, duress, or taking of an undue advantage.  Under either theory the Trustee is entitled to recover for unjust enrichment.

41.     There is no dispute that the purpose of the Letters of Credit was to secure the Obligations of U.S. Liquids under the Master Agreement.  It follows that the Estate should be paid the Excess LOC proceeds and that Liberty Mutual should not expect to retain them when they are not necessary to satisfy the Obligations.  Accordingly, society's reasonable expectation of property would be defeated unless the Excess LOC Proceeds under the law are property of the Estate.  Notwithstanding the fact that Liberty Mutual holds Letter of Credit proceeds still in excess of the funds necessary to meet the Obligations, Liberty Mutual continues to wrongfully hold some of the Excess LOC Proceeds, monies to which Liberty Mutual has no claim.

42.     To the extent that the Court should conclude that the Master Agreement does not address the Excess LOC Proceeds, Liberty Mutual has been unjustly enriched at the expense of the Estate and its creditors, including BANA, by retaining both the Excess LOC Proceeds and

the Premium Overpayments as well as the interest anticipated to be paid on those funds by the Parties.

43.     Liberty Mutual, having exclusive access to the facts giving rise to the amount of the Obligations under the Master Agreement and to the amounts remaining in Excess LOC Proceeds after using the funds needed to satisfy those Obligations, took undue advantage in failing to come forward timely and disclose to the Court and/or the Trustee the amount of Excess LOC Proceeds it held.

44.     Specifically, by holding more than $4 million of Estate assets for several years, while the Estate continued to accrue interest on its obligation to BANA, Liberty Mutual has been unjustly enriched at the expense of the Estate.  If the Court were to conclude that the Master Agreement did not expressly address Liberty Mutual's obligation to pay interest, the Trustee asserts that Liberty Mutual has been unjustly enriched by its access to and ability to use the Excess LOC Proceeds and Premium Overpayments for this extended period to the detriment of the Estate's being able to pay its obligations to BANA without accruing interest on that debt. And the Estate and/or BANA have been injured to the extent they could have deposited the Excess LOC Proceeds and the Premium Overpayments and accrued interest on them.

45.     The Excess LOC Proceeds and the Overpayments held by Liberty Mutual are Estate property within the meaning of Section 541(a) of the Bankruptcy Code and were, and to some extent still are, being wrongfully withheld by Liberty Mutual.

46.     Under Section 542(a) of the Bankruptcy Code as well as the common law of the State of Texas, Liberty Mutual is obligated to turn over the Excess LOC Proceeds along with pre- and post-judgment interest, attorneys' fees and litigation expenses, to the Estate.

C.    **Count III**:  **Conversion (Turnover)**

47.    The Trustee restates and incorporates paragraphs 1 through 45 as if fully stated in this paragraph.

48.    Under Texas law a party states a claim for conversion by establishing the following elements:  (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property.  *Settlement Capital Corp., Inc. v. Pagan,* 649 F.Supp.2d 545, 558 (N.D. Tex. 2009).

49.    The Excess LOC Proceeds and the Overpayments are property of the Estate under section 541(a) within the ambits of well established case law.

50.    Liberty Mutual has wrongfully exerted dominion over property of the Estate, namely the Excess LOC Proceeds and interest under the Master Agreement, in denial of, and inconsistent with, the Estate's rights to those funds.

51.    Liberty Mutual's failure to come forward and notify promptly the Trustee of the amount of Excess LOC Proceeds and Premium Overpayments shows a lack of good faith.  The Trustee has previously detailed the history of facts concerning his demands made on Liberty Mutual in late 2008 and his negotiations with Liberty Mutual for more than a year earlier over the Excess LOC Proceeds that Liberty Mutual unjustifiably held.  The Trustee continued to negotiate with Counsel for Liberty Mutual after both the First and Second Stipulations.

52.    However, despite the fact that Liberty Mutual never had a claim to the overwhelming majority of the Excess LOC Proceeds or the Premium Overpayments and despite multiple and repeated demands by the Trustee, Liberty Mutual belatedly released some of those

funds and still continues to retain and refuses to return the remaining Excess LOC Proceeds and interest to the Estate.

53.     The Excess LOC Proceeds and the Premium Overpayments that were or are held by Liberty Mutual constitute property of the Estate within the meaning of Section 541 of the Bankruptcy Code, some of which still are being wrongfully withheld by Liberty Mutual.

54.     Under Section 542(a) of the Bankruptcy Code, Liberty Mutual is obligated to turn over the Excess LOC Proceeds and interest to the Trustee, along with pre- and post-judgment interest, attorneys' fees and litigation expenses.

## D.     Count IV:   Cause of Action Under §§ 541.151 for Violation of Insurance Code §§541.060(a)(2) and 541.060(a)(4)(Turnover)

55.     The Trustee restates and incorporates paragraphs 1 through 54 as if fully stated herein.

56.     Section 541.151 creates a cause of action under the Insurance Code for violations of other aspects of the Insurance Code, including Section 541.060.   Section 541.060(a)(2) imposes on Liberty Mutual a duty of "good faith" in effectuating "a prompt, fair, and equitable settlement" of claims for which its "liability has become reasonably clear."   Liberty Mutual has claimed that it was holding the proceeds of the Letter of Credit to settle certain outstanding claims under the Policies, which took time to resolve.

57.     This claim demonstrates a lack of good faith, given that 1) Liberty Mutual silently held the Excess LOC Proceeds for three years without voluntarily notifying the Court or the Trustee that there were Excess LOC Proceeds far in excess of the amounts needed to meet the Obligations of U.S. Liquids; and 2) Liberty Mutual knew in June of 2007 that it held almost $4 million in Excess LOC Proceeds, which it had held from 2004.   Under these facts, it defies logic

to assume that Liberty Mutual had no knowledge or no reasonable way of knowing earlier that it was holding at least some significantly large amount of Excess LOC Proceeds.

58.     This time frame also demonstrates failure to resolve claims within a reasonable time.  Because Liberty Mutual knew it held almost $4 million in Excess LOC Proceeds in June of 2007, surely Liberty Mutual knew or should have known it was holding at least some significant amount of Excess LOC Proceeds far sooner during the previous three years it was holding the Excess LOC Proceeds.

59.     But Liberty Mutual, even in June of 2007, did not come forward voluntarily to return the moneys it knew it had no legal right to retain.  Instead, it avoided returning phone calls and emails of any substantive nature until the Trustee's Counsel was forced to file the Joint Motion to convince Liberty Mutual to even begin to answer the Trustee's questions regarding the Excess LOC Proceeds.

60.     Liberty Mutual did not require nearly the amount of time it took to return the Excess LOC Proceeds to the Estate after drawing down the Letter of Credit in August of 2004.  This excessive time frame for settling the claims under the Policies demonstrates that Liberty Mutual breached its duty of "good faith" toward U.S. Liquids in effectuating a "prompt, fair, and equitable settlement" of those claims in question.  Certainly Liberty Mutual's liability under the Policies would have become reasonably clear long before now and long before the payment of the Returned Funds in September of 2007.

61.     Accordingly, Liberty Mutual has also violated Section 541.060(a)(4) which requires Liberty Mutual "within a reasonable time to affirm or deny coverage of a claim to a policyholder."  The time Liberty Mutual has taken to turn over the Excess LOC Proceeds has been unreasonable regarding the settlement of any claims that may have been outstanding under

the Policies when the Letter of Credit was drawn down. And Liberty Mutual violated this requirement when it finally turned over the Returned Funds three years after drawing down the Letter of Credit.

62. The Estate has been damaged in not recovering promptly the Returned Funds, the remaining Excess LOC Proceeds, and the interest owed on those funds under the Master Agreement. Had these funds been returned sooner, the Estate and/or BofA could have earned interest on them; and the Estate could have avoided the interest on the payment of this debt to BofA.

63. Therefore, the Estate has a right to recover on behalf of U.S. Liquids for Liberty Mutual's previously alleged violations of the Insurance Code.

64. These funds and the interest Liberty Mutual owes on them are Estate property within the meaning of Bankruptcy Code Section 541(a).

65. Accordingly, Liberty Mutual must turn over these moneys to the Trustee in accordance with Bankruptcy Code Section 542(b) for the damages resulting from its violations of the Insurance Code.

**E.     Count V:  Breach of the Duty of Good Faith at Common Law (Turnover)**

66. The Trustee restates and incorporates paragraphs 1 through 65 as if fully stated herein.

67. The Texas Supreme Court has ruled that insurance contracts create "special relationships" between the insurer and the insured that impose a duty of good faith in the performance of the contract creating that special relationship. *See Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 212 (Tex. 1988). The Master Agreement and the underlying Policies are all insurance contracts that created a special relationship between U.S. Liquids and Liberty

Mutual.  Therefore, Liberty Mutual owed U.S. Liquids and its Estate a duty of good faith under the Master Agreement and the Policies as well as under the associated Letter of Credit.

68.    A party states a cause of action for breach of the duty of good faith and fair dealing when it alleges that there is no reasonable basis for denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay.  *See Arnold v. Nat'l County Mutual Fire Ins. Co.,* 725 S.W.2d 165,176 (Tex. 1987).

69.    By "laying behind the log" and failing to notify the Trustee (who stands in the shoes of U.S. Liquids) that it was holding Estate property to the Trustee within a reasonable time and by failing to promptly turn over the Estate's property in the form of the Premium Overpayments and all of the Excess LOC Proceeds (including interest on all of these funds) in accordance with the duties Liberty Mutual had under the Master Agreement, Liberty Mutual has violated the duty of good faith it owed the Trustee on behalf of U.S. Liquids under the Policies, the Master Agreement, and the Letter of Credit.  Liberty Mutual's refusal to pay interest under the Master Agreement is also a breach of its duty of good faith to the Trustee.

70.    The Estate has been damaged by Liberty Mutual's refusal to pay all the Excess LOC Proceeds to the Estate in a timely fashion so that the Estate and/or BANA could have earned interest on the Excess LOC Proceeds.  The Estate has also been damaged by Liberty Mutual's refusal to turn over the Excess LOC Proceeds and the interest the Estate is owed under the Master Agreement.

71.    The Excess LOC Proceeds as well as the interest Liberty Mutual owes on the Returned Funds, the Overpayments, and the Excess LOC Proceeds are property of the Estate within the meaning of Bankruptcy Code Section 541(a).

72.     Accordingly, in compliance with Bankruptcy Code Section 542(b), Liberty Mutual must turn over to the Trustee the remaining Excess LOC Proceeds, and interest on these funds and the Returned Funds.

## F.      Count VII:  Surcharge of Custodian Under Section 543(c)(3)(Turnover)

73.     The Trustee restates and incorporates paragraphs 1 through 71 as if fully stated herein.

74.     The Trustee here seeks turnover of the Estate's property and requests that the Court surcharge Liberty Mutual as a custodian of the Estate's property under Bankruptcy Code section 543.  Under section 101(11) a "custodian" is defined, in relevant part, as a "trustee, receiver, or agent under . . . a contract[] that is . . . authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property. . . ." As a custodian of the Estate's property within the meaning of Bankruptcy Code section 101(11)(C), Liberty Mutual had specified duties under Bankruptcy Code section 543.   Because Liberty Mutual has violated the requirements of Bankruptcy Code section 543(a) and (b), as discussed in the paragraphs below, the plain language of section 543(c)(3) require this Bankruptcy Court to surcharge Liberty Mutual.

75.     Section 543(a) precludes a custodian of the Debtor's property from making disbursement from and taking action regarding the administration of property of the Debtor except to preserve that property.  *See* 11 U.S.C. § 543(a).  Liberty Mutual, as a custodian of the Excess LOC Proceeds, was required under the Bankruptcy Code to take no action to disburse that property.

76.     Instead, Liberty Mutual secretly held the Excess LOC Proceeds for an extended time during this Bankruptcy Case and continued to use them for its own benefit.  Liberty Mutual did not report the funds or its use of those funds to the Trustee or this Court—repeatedly

disbursing amounts of the Excess LOC Proceeds to itself under the insurance contracts in violation of section 543(a).  By June 6, 2007, Liberty Mutual admits that it had used roughly $1,051,381.79 to satisfy U.S. Liquids' Obligations, and it still was holding an additional $4,196,833.08 in Excess LOC Proceeds from which to take future disbursements at its sole discretion.

77.     Liberty Mutual also violated section 543(b) by failing to comply with its requirements that a custodian of estate funds (1) must deliver those funds to the trustee "on the date that such custodian acquires knowledge of the commencement of the case; and . . . (2) file an accounting of the property of the debtor . . . that, at any time, came into the possession, custody, or control of such custodian."   *See* 11 U.S.C. § 543(b). Despite dealings with the Trustee as early as 2006, Liberty Mutual still has not fully complied with its first duty under section 543(b) and has never complied with its second duty under this section of the Bankruptcy Code.

78.     At no time has Liberty Mutual filed an accounting with the Court of the property of U.S. Liquids it was holding.  Although the Debtors' Schedules showed the amount of Letter of Credit proceeds Liberty Mutual had drawn down, that amount did not disclose what actual property of the Estate Liberty Mutual held.  Liberty Mutual never filed an accounting of the Estate's property that came into its possession, custody, and control.  This duty would appear to include an accounting to the Court of what amounts of the Letter of Credit proceeds had been disbursed to Liberty Mutual as they were determined and an accounting of what Excess LOC Proceeds were in its possession from time to time as that amount changed upon disbursements. Liberty Mutual never filed any such accounting.

79.     Liberty Mutual failed on the date it learned of this Bankruptcy Case and on every date thereafter to comply with the requirements of section 543(a) or (b) despite the fact that it knew it was holding approximately $4 million in Excess LOC Proceeds.  It did not turn over the Excess LOC Proceeds without prompting, as it should have under section 543(a).  Nor did it seek Court authority or discontinue making disbursements to itself from the LOC proceeds.

80.     Accordingly, Liberty Mutual must cease making disbursements to itself without Court authorization and turn over the Excess LOC Proceeds to the Trustee along with an accounting of all the LOC proceeds it has held from 2004.

81.     These violations result, in pertinent part, under section 543(c) in a mandate requiring "after notice and a hearing", that the court "shall. . .(3) surcharge such custodian" unless the disbursements were made in accordance with applicable law or were approved by a court after notice and a hearing.  *See* 11 § 543(c)(3).

82.     A surcharge is warranted in view of Liberty Mutual's failure to comply with the law of turning over the Excess LOC Proceeds and failing to obtain this Court's approval for retaining the Excess LOC Proceeds from which to disburse amounts to itself, in its sole discretion.  These actions were not in accordance with applicable law.  Nor did Liberty Mutual notify the Debtor or the Trustee of amounts requested to be reimbursed as required under paragraph 5(a) of the Master Agreement.  Liberty Mutual made use of the LOC proceeds at its own discretion without consulting either the Court or the Trustee.  This was not according to the law of its own contract—agreeing to notify the Debtor, or now, the Trustee when reimbursements were needed and/or justified.  (*See* Master Agreement, ¶ 5(a).)

## VI.    Prayer

The Trustee requests the Court to:

A) Find for the Estate and enter judgment directing Liberty Mutual to:

    i.)    Turn over the remaining Excess LOC Proceeds not applied to satisfy Obligations of U.S. Liquids under the Master Agreement and the Policies;

    ii.)   Pay interest to the Estate, at the rates set forth under the Master Agreement on the Premium Overpayments, the Returned Funds, and the remaining Excess LOC Proceeds that were not used to satisfy any Obligations of U.S. Liquids under the Master Agreement and the Policies;

    iii)   Pay pre- and post-judgment interest on all such monies;

    iv.)  Pay the Estate's and BANA's attorneys' fees and expenses, together with all costs of Court;

    v.)   Pay an appropriate surcharge under 11 U.S.C. § 543(c)(3); and

B) Grant the Estate any other relief at law or in equity to which it is entitled.

Respectfully submitted this 24th of June, 2011,

**TOW & KOENIG**

By:   _/s/  Julie M. Koenig_
      Julie M. Koenig
      SBA# 14217300
      Federal ID# 10396
      Glenna England Crews
      SBA#00783898
      Federal ID# 15313
      Rodney Tow, Trustee
      Federal ID# 3196
      26219 Oak Ridge Drive
      The Woodlands, Texas 77380
      281/681-9100 (Telephone)
      832/482-3979 (Telecopier)
      jkoenig@towkoenig.com
      **Attorney for the Trustee**