Kevin M. Lippman
Texas Bar No. 00784479
Zachery Z Annable
Texas Bar No. 24053075
Munsch Hardt Kopf & Harr, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Telecopier: (214) 855-7584

ATTORNEYS FOR DEFENDANTS

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:**<br><br>**U.S. LIQUIDS, INC.**<br><br>**Debtor.** | §<br>§<br>§<br>§<br>§ | **CASE NO. 04-41522-H5-7**<br><br>**(Chapter 7) Jointly Administered** |
| **RODNEY TOW, TRUSTEE,**<br><br>**Plaintiff**<br><br>**v.**<br><br>**LIBERTY MUTUAL INSURANCE COMPANY, LIBERTY MUTUAL FIRE INSURANCE COMPANY, LIBERTY INSURANCE CORPORATION, THE FIRST LIBERTY INSURANCE CORPORATION, EMPLOYERS INSURANCE OF WAUSAU, WAUSAU GENERAL INSURANCE COMPANY, WAUSAU UNDERWRITERS INSURANCE COMPANY, WAUSAU BUSINESS INSURANCE COMPANY,**<br><br>**Defendants** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Adversary Proceeding No. 11-03135** |

**DEFENDANTS' REPLY TO**
**TRUSTEE'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS TRUSTEE'S FIRST AMENDED COMPLAINT FOR TURNOVER OF ESTATE PROPERTY OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT**

TO THE HONORABLE KAREN K. BROWN,
CHIEF JUDGE, UNITED STATES BANKRUPTCY COURT:

Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, Employers Insurance of Wausau, Wausau General Insurance Company, Wausau Underwriters Insurance Company, and Wausau Business Insurance Company (collectively, the "Defendants"), file this reply (the "Reply") to the *Trustee's Response to Defendants' Motion to Dismiss Trustee's First Amended Complaint for Turnover of Estate Property or, in the Alternative, Motion for More Definite Statement* [Adv. Dkt. No. 21] (collectively with the Trustee's supporting brief [Adv. Dkt. No. 22], the "Response") filed by Rodney Tow (the "Trustee" or "Plaintiff"), the Chapter 7 Trustee for the jointly administered Chapter 7 bankruptcy cases of U.S. Liquids, Inc. (the "Debtor"), GEM Management, Inc., U.S. Liquids of Pennsylvania, Inc., USL Management Limited Partnership, USL General Management, Inc., U.S. Liquids of Texas, Inc., and U.S. Liquids Northeast, Inc. (collectively with the Debtor U.S. Liquids, Inc., the "Debtors") in opposition to Defendants' *Motion to Dismiss Trustee's First Amended Complaint for Turnover of Estate Property or, in the Alternative, Motion for a More Definite Statement* [Adv. Dkt. No. 12] (collectively with Defendants' supporting brief [Adv. Dkt. No. 13], the "Motion to Dismiss").[1] Defendants filed the Motion to Dismiss in response to Plaintiff's *First Amended Complaint for Turnover of Estate Property* [Adv. Dkt. No. 6] (the "Amended Complaint"). In support of the Reply, Defendants represent the following:

[1] Capitalized terms not otherwise defined in this Reply have the same meaning ascribed to them in Defendants' Motion to Dismiss.

**DEFENDANTS' REPLY TO TRUSTEE'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS TRUSTEE'S FIRST AMENDED COMPLAINT FOR TURNOVER OF ESTATE PROPERTY OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT**– Page 2

## I.
## INTRODUCTION

1. Rather than provide the Court with a substantive retort to Defendants' Motion to Dismiss, Plaintiff filed a Response that is rife with factual, legal and logical errors. The inaccurate statements and implausible conclusions pervading the whole of the Response are indicative of the lackadaisical manner in which Plaintiff has approached this dispute—a dispute going back to at least September of 2005. Instead of acknowledging his failure to timely bring this action on behalf of the Estate—an Estate that was formed upon the commencement of the Debtor's Bankruptcy Case nearly 7 years ago—Plaintiff attempts in earnest to depict Defendants as scurrilous bad actors who "secretly" withheld Estate property, ostensibly for their own gain. While Defendants have not yet had an occasion to deconstruct for the Court the fallacious nature of Plaintiff's allegations, Defendants unequivocally state to this Court that the portrait of events painted by Plaintiff could not be farther from the truth.

2. Under the unambiguous terms of the Master Agreement—the agreement governing Defendants' and Debtor's obligations to one another with respect to the Policies of insurance issued by Defendants to Debtor—Defendants exercised their explicit and undisputed right to draw down the entire Letter of Credit following BofA's notice of non-renewal of the Letter of Credit and the Debtor's failure to provide a substitute letter of credit. There is no legitimate dispute that the Debtor failed to comply with its obligations to provide the necessary security as required under the Master Agreement. Nevertheless, Plaintiff's Amended Complaint is a house of cards built upon an ignorance of the Debtor's breach of its obligations of the Master Agreement as well as at least two other fundamentally faulty assumptions: First, that Defendants somehow breached the Master Agreement by holding the Excess LOC Proceeds and Premium Overpayments (which the Defendants deny that they are holding any "premium overpayment");

and second, that the Excess LOC Proceeds and the Premium Overpayment constitute property of the Estate. These erroneous assumptions are so pervasive throughout and so fundamental to Plaintiff's arguments that their absence negates the plausibility of any of Plaintiff's claims for relief.

## II.
## DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS

### A. Plaintiff Fails to Prove that the Claims Asserted in the Amended Complaint Are Property of the Estate

3. As stated at the outset of the Motion to Dismiss, Plaintiff has the burden of proving that the Court has subject matter jurisdiction to hear the claims set forth in the Amended Complaint. *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). Neither Plaintiff's Amended Complaint nor his Response are sufficient to prove that the Court has jurisdiction to determine any dispute involving the proceeds of the Letter of Credit. The Fifth Circuit has made unequivocally clear that "that letters of credit and the proceeds therefrom are not property of the debtor's bankruptcy estate." *EOP-Colonnade of Dallas Ltd. P'ship v. Faulkner (In re Stonebridge Techns., Inc.)*, 430 F.3d 260, 269 (5th Cir. 2005). Lacking any credible argument that *Stonebridge* is inapposite to this case, Plaintiff instead attempts to argue that Defendants are judicially estopped from disputing that the Excess LOC Proceeds constitute property of the Estate. In support of this preposterous argument, Plaintiff makes the completely fallacious statement that Defendants "admitted" that the Letter of Credit proceeds were property of the Estate when they executed, along with Plaintiff and BofA, the *Stipulation and Agreed Order Regarding the Release of Certain Collateral* [Docket No. 136] (the "First Stipulation") and the *Second Stipulation and Agreed Order Regarding the Release of Certain Collateral* [Docket No. 162] (the "Second Stipulation"), both approved by the Court.

4. Pursuant to both stipulations, the returned funds were paid directly to BofA, as agent for the lenders. *See* First Stipulation ¶ 3; Second Stipulation ¶ 4.[2]

5. In addition, there is absolutely nothing in either the First Stipulation or the Second Stipulation which could possibly be deemed to constitute an admission by Defendants (or by BofA) that the Letter of Credit proceeds constituted property of the Estate. In fact, both stipulations contain the following language:

> **Nothing herein shall constitute**, nor be deemed to constitute, **an admission** by any of the Parties hereto as to the validity of any of the other Parties' claims, rights or defenses referenced herein or otherwise.

First Stipulation ¶ 7; Second Stipulation ¶ 8 (emphasis added).[3] The stipulations merely provided a mechanism to effectuate payment to BofA of certain of the Excess LOC Proceeds held by Defendants. For Plaintiff to suggest that the stipulations operated as any kind of liquidation or determination of the parties' rights is disingenuous. Defendants simply did not admit in the stipulations—nor do they admit now—that the Excess LOC Proceeds constitute property of the Estate.

6. Furthermore, Plaintiff cites the unpublished opinion of *Litzler v. Chamblee & Ryan, P.C. (In re TIC United Corp.)*, 2008 WL 2437868 (Bankr. N.D. Tex. June 17, 2008) (Houser, C.J.), for the propositions that Defendants' holding of the Letter of Credit proceeds in an amount in excess of that needed by Defendants to satisfy claims against the Debtor under the Policies was wrongful and that such Excess LOC Proceeds constitute property of the Estate.

[2] As discussed in more detail in the Motion to Dismiss, the Court, in the context of considering a motion to dismiss, can consider facts of which it can take judicial notice. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996). As the First Stipulation and the Second Stipulation are filed on the docket in the Bankruptcy Case, and because the Court can take judicial notice of its own records, *Sec. & Exch. Comm'n v. First Fin. Group of Tex.*, 645 F.2d 429, 433 n.6 (5th Cir. 1981), the Court can consider the stipulations in ruling on this Motion to Dismiss.

[3] Consistent with this reservation of rights, Defendants and BofA reserved their rights to contest the Trustee's right to seek compensation on the Payment to BofA. *See* First Stipulation ¶ 5; Second Stipulation ¶ 6.

**DEFENDANTS' REPLY TO TRUSTEE'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS TRUSTEE'S FIRST AMENDED COMPLAINT FOR TURNOVER OF ESTATE PROPERTY OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT**– Page 5

Plaintiff fails to mention, however, that while Judge Houser explained that proceeds of a letter of credit **wrongfully** drawn by a beneficiary can become property of the estate, such proceeds do not of necessity become property of the estate. "Once the beneficiary has received the proceeds [of the letter of credit], it can retain them only if the funds rightfully belong to the beneficiary **under its underlying agreement or contract** with the purchaser of the letter of credit." *TIC United*, 2008 WL 2437868 at *6 (emphasis added). Under the explicit terms of the Master Agreement—a copy of which is attached to Plaintiff's Amended Complaint and of which the Court may take judicial notice and consider in ruling on the Motion to Dismiss—Defendants had the absolute right "draw upon the full amount of the letter(s) of credit" when the Debtor failed to provide a substitute letter of credit to Defendants in accordance with the terms of the Master Agreement. Master Agreement ¶ 10. Plaintiff admits in his Response: "[T]he underlying Master Agreement still governs the rights of the parties." Response ¶ 14. Accordingly, Defendants' drawdown of the entire amount of the Letter of Credit was undisputedly authorized, and the proposition articulated in *TIC United* and relied upon by Plaintiff that wrongfully retained letter of credit proceeds become property of the estate is inapplicable in this case.

7.    Because the Letter of Credit proceeds are not property of the Estate, the Court has no jurisdiction to hear Plaintiff's claims demanding turnover of the Excess LOC Proceeds and interest thereon.[4]

---

[4] As noted in the Motion to Dismiss, Defendants dispute the contention that they are holding $287,000 in Premium Overpayments. Defendants assert that the $287,000 in alleged Premium Overpayments was actually the $278,000 in escrow funds held as security by Defendants, which was delivered to BofA pursuant to the Second Stipulation. The $287,000 figure is the result of the transposition of the second and third numerals arising from an apparent scrivener's error. Accordingly, Defendants assert that there is no live dispute regarding the Premium Overpayments.

**DEFENDANTS' REPLY TO TRUSTEE'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS TRUSTEE'S FIRST AMENDED COMPLAINT FOR TURNOVER OF ESTATE PROPERTY OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT**– Page 6

**B. Plaintiff Fails to Show He Has Standing to Bring the Claims Asserted in the Amended Complaint**

8. As discussed more fully in the Motion to Dismiss, Debtor assigned to BofA (i) its right, title and interest to any proceeds from the Policies, which presumably include Debtor's rights, if any, in the Premium Overpayments, (ii) Debtor's rights to bring claims arising under the Master Agreement, and (iii) Debtor's rights, if any, in the proceeds from the Letter of Credit. Accordingly, Plaintiff is without standing to assert the claims made in the Amended Complaint. Plaintiff's attempt to characterize the assignment to BofA of the Debtor's rights with respect to the Policies and the Master Agreement as a "collateral" assignment instead of an "absolute" assignment is a distinction without a difference. When Plaintiff filed the *Joint Motion for Order Directing Examination of Liberty Mutual and Directing Production of Documents* [Docket No. 121] (the "2004 Motion") in the Bankruptcy Case, he attached a copy of that certain *Assignment as Collateral Security of Proceeds from Insurance Policies* (the "Assignment")[5] executed by the Debtor and acknowledged by Defendants. Whatever interest the Estate has in the litigation, its right to bring suit was unequivocally transferred to BofA. And even if the Estate maintains some equitable interest in these claims, such interest is too far removed to satisfy the prudential requirements for standing articulated by the United States Supreme Court.[6] As stated in *Warth v. Seldin*, a "plaintiff generally must assert his own **legal** rights and interests, and cannot rest his claim to relief on the **legal** rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (emphasis added). Because the Debtor assigned its legal rights to BofA under the

[5] Because the Assignment has been made a part of the record in the Bankruptcy Case, the Court can take judicial notice of the Assignment and consider it in the context of deciding the Motion to Dismiss.

[6] The Estate's lack of interest in the Excess LOC Proceeds is further evidenced by Plaintiff's admission that such funds will all go to BofA. *See* Plaintiff's Brief ¶ 11.

**DEFENDANTS' REPLY TO TRUSTEE'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS TRUSTEE'S FIRST AMENDED COMPLAINT FOR TURNOVER OF ESTATE PROPERTY OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT**– Page 7

Assignment—including the right to bring the claims asserted by Plaintiff in the Amended Complaint—the Court should conclude that Plaintiff has no standing to assert these claims.[7]

## C. Plaintiff's Claims for Turnover Are Not Ripe

9. In his Response, Plaintiff mischaracterizes Defendants' ripeness arguments addressed in the Motion to Dismiss. Specifically, Plaintiff states that "Defendants assert that the Plaintiff's claims are not ripe for consideration by this Court." Plaintiff's Brief ¶ 23. Plaintiff implies that Defendants challenge the ripeness of all of Plaintiff's claims. This is not the case. As stated in the Motion to Dismiss: "To the extent Plaintiff's claims in the Amended Complaint **are for turnover predicated on sections 542 and 543 of the Bankruptcy Code**, those claims should be dismissed because they are not ripe for consideration." Defendants' Brief ¶ 30. (Emphasis added). In fact, after attempting to excoriate Defendants for an argument they never made, Plaintiff affirms Defendants' ripeness contentions by stating that "[t]urnover claims (and similarly claims for surcharge) do not ripen until 'a determination by the Court that the property in dispute is, in fact, property of the estate.'" Plaintiff's Brief ¶ 102. Plaintiff continues by admitting that the Court has not made a definitive ruling on whether the Excess LOC Proceeds are property of the Estate. *Id.*

10. As discussed more fully in the Motion to Dismiss, the United States District Court for the Southern District of Texas has stated:

> [T]urnover proceedings under section 542 are not to be used to liquidate disputed contract claims. Congress intended 11 U.S.C. § 542 to apply to claims for tangible property and money due to the debtor without dispute which are fully matured and payable on demand. Congress intended to ease reorganization by allowing

[7] Defendants would note for the Court that BofA took an active role in other actions involving this dispute between Plaintiff and Defendants. For example, BofA jointly filed the 2004 Motion with Plaintiff. If Plaintiff's recovery on these claims is to inure to the benefit of BofA, it is unclear why BofA simply does not bring these claims on its own behalf. Instead, Plaintiff is utilizing the limited assets of the Estate to pursue claims which seem will only benefit BofA.

> the debtor to obtain funds immediately necessary for survival—not all funds, only those not in dispute. Unless and until [a d]ebtor's claims against the defendants are liquidated in a court of competent jurisdiction or by agreement, they cannot be enforced . . . through a turnover order.

*Trefny v. Bear Stearns Sec. Corp.*, 243 B.R. 300, 320 (S.D. Tex. 1999) (Rosenthal, J.) (internal quotation marks and citations omitted). Because the entirety of the dispute between Plaintiff and Defendants can fairly be characterized as a dispute regarding the interpretation of the terms of the Master Agreement, until those disputes are resolved, Plaintiff's turnover demands are premature and not ripe for adjudication.

## III.
## DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

### A. To the Extent the Court Has Jurisdiction to Consider Plaintiff's Claims, the Court Should Dismiss Plaintiff's Claims as Being Barred by Limitations

11. In the Motion to Dismiss, Defendants painstakingly articulated as to each and every one of Plaintiff's claims the applicable statute of limitations and when each of Plaintiff's alleged claims would have accrued. Similarly, with regard to Plaintiff's claims for turnover under sections 542 and 543 of the Bankruptcy Code, Defendants explained in detail why those claims should be barred by laches.

12. In the Response, Plaintiff takes great liberty with the facts in assessing when his causes of action allegedly accrued. Plaintiff would have the Court believe that the limitations period on Plaintiff's claims did not begin to run until Defendants allegedly "distinctly and unequivocally" refused to return to the Estate the Excess LOC Proceeds with interest. Plaintiff's assertion is absurd.

13. As indicated in the Motion to Dismiss, the Debtor's Schedules indicate that the Debtor was aware, no later than the Petition Date in 2004, that Defendants had drawn down the Letter of Credit and were holding the proceeds therefrom. The Schedules further reflect the

Debtor's belief that Defendants were holding the alleged Premium Overpayments as of the commencement of the Bankruptcy Case. As discussed in more detail in the Motion to Dismiss, the Plaintiff, as a bankruptcy trustee, is imputed with all the knowledge of the Debtor. *See Reed v. City of Arlington*, 620 F.3d 477, 482 (5th Cir. 2010). Accordingly, Plaintiff knew that Defendants were holding the Letter of Credit proceeds roughly seven years ago. And even if Plaintiff could somehow argue that he was truly unaware of the existence of these alleged causes of action as of the Petition Date, it is clear that Plaintiff knew of the causes of action no later than September of 2005. As stated in the Response: "The Trustee would submit that he has been working with Defendants' Counsel to obtain turnover of this Estate Property **since September 5, 2005.**" Response ¶ 10 (emphasis added). Why would Plaintiff be working to obtain turnover of what he characterizes as "Estate Property" in September of 2005 if he did not believe that the Estate had some legal right to the Excess LOC Proceeds?

14. Contrary to Plaintiff's assertions in the Response, and regardless of (i) whether Plaintiff's claims were liquidated at the time, and (ii) when Defendants purportedly *really* refused to pay interest on the Excess LOC Proceeds, Plaintiff's Response makes clear that he was aware of the existence of the alleged claims no later than September of 2005. Instead of timely investigating and asserting the claims allegedly held by the Estate, though, Plaintiff waited nearly ***five and one-half years*** after Plaintiff purportedly began "working with Defendants' Counsel to obtain turnover of this Estate Property" to bring his claims. Plaintiff's arguments regarding the accrual and discovery of his claims are simply untenable in light of these admitted facts, and the Court should give them no credence.

## IV.
## CONCLUSION

15. Plaintiff's Response fails to credibly articulate how this Court has jurisdiction over the claims in the Amended Complaint. Furthermore, to the extent the Court does have jurisdiction to consider any of Plaintiff's claims, Plaintiff simply failed to timely assert those claims. Accordingly, for the reasons stated in the Motion to Dismiss, the Court should dismiss each and every one of Plaintiff's claims.

Respectfully submitted on this 12th day of July, 2011.

        **MUNSCH HARDT KOPF & HARR, P.C.**
        500 N. Akard Street, Suite 3800
        Dallas, Texas 75201-6659
        Telephone: (214) 855-7500
        Facsimile: (214) 855-7584

        By: */s/ Kevin M. Lippman*
           Kevin M. Lippman
           Texas Bar No. 00784479
           Zachery Z. Annable
           Texas Bar No. 24053075
           klippman@munsch.com
           zannable@munsch.com

        **ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2011, a true and correct copy of the foregoing Reply was filed with the Court and served (i) electronically upon those parties registered to receive notice via the Court's CM/ECF system and (ii) upon the party listed below via electronic mail.

Julie Mitchell Koenig
Tow and Koenig PLLC
26219 Oak Ridge Drive
The Woodlands, TX 77380

*/s/ Zachery Z. Annable*
Zachery Z. Annable